## UNITED STATES v. SCHALLINGER PRODUCE CO.

(District Court, E. D. Washington. October 5, 1914.)

1. INDICTMENT AND INFORMATION ⬤═52—VERIFICATION OF INFORMATION.

While an information filed by the United States attorney under the sanction of his official oath, and without verification, would be sufficient in certain cases, an information not so filed, but expressly stating upon its face that it was made upon the oath of the several parties whose affidavits were annexed, was not sufficient, unless the affidavits could be considered.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 163–168; Dec. Dig. ⬤═52.]

2. INDICTMENT AND INFORMATION ⬤═52—VERIFICATION OF INFORMATION.

Notaries public have no authority under the laws of the United States to administer any oaths in connection with criminal prosecutions, and hence an information, expressly stating that it was made upon the oath of parties whose affidavits were annexed, was defective, where three of the affidavits were taken before notaries public, and the fourth, standing alone, was of no avail.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 163–168; Dec. Dig. ⬤═52.]

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. INDICTMENT AND INFORMATION ⊙═⊃52—VERIFICATION OF INFORMATION—
"CRIMINAL PROCEEDING."
Though a corporation cannot commit certain crimes, and may not be
arrested or imprisoned, a proceeding against it for the violation of a
criminal statute is a "criminal proceeding," with all the incidents of
such a proceeding, and an information therein is defective, if made upon
the oath of parties named in annexed affidavits taken before notaries
public.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig.
§§ 163–168; Dec. Dig. ⊙═⊃52.

For other definitions, see Words and Phrases, First and Second Series,
Criminal Proceeding.]

Criminal proceeding by the United States against the Schallinger
Produce Company. On motion to quash the information. Motion
granted.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., and F. L.
Stotler, Asst. U. S. Atty., of Colfax, Wash., for the United States.
Wakefield & Witherspoon, of Spokane, Wash., for defendant.

RUDKIN, District Judge. Section 2 of the act of Congress of
June 30, 1906 (34 Stat. 768, c. 3915), declares:

"That the introduction into any state or territory or the District of Colum-
bia from any other state or territory or the District of Columbia, or from any
foreign country, or shipment to any foreign country of any article of food
or drugs which is adulterated or misbranded, within the meaning of this act,
is hereby prohibited; and any person who shall ship or deliver for shipment
from any state or territory or the District of Columbia to any other state or
territory or the District of Columbia, or to a foreign country, or who shall
receive in any state or territory or the District of Columbia from any other
state or territory or the District of Columbia, or foreign country, and having
so received, shall deliver, in original unbroken packages, for pay or other-
wise, or offer to deliver to any other person, any such article so adulterated
or misbranded within the meaning of this act, or any person who shall sell or
offer for sale in the District of Columbia or the territories of the United
States any such adulterated or misbranded foods or drugs, or export or offer
to export the same to any foreign country, shall be guilty of a misdemeanor,
and for such offense be fined not exceeding two hundred dollars for the first
offense, and upon conviction for each subsequent offense not exceeding three
hundred dollars or be imprisoned not exceeding one year, or both, in the dis-
cretion of the court. * * *" Comp. St. 1913, § 8718.

Section 3 declares:

"That the Secretary of the Treasury, the Secretary of Agriculture, and
the Secretary of Commerce and Labor shall make uniform rules and regula-
tions for carrying out the provisions of this act, including the collection and
examination of specimens of foods and drugs manufactured or offered for
sale in the District of Columbia, or in any territory of the United States, or
which shall be offered for sale in unbroken packages in any state other than
that in which they shall have been respectively manufactured or produced, or
which shall be received from any foreign country, or intended for shipment to
any foreign country, or which may be submitted for examination by the chief
health, food, or drug officer of any state, territory, or the District of Columbia,
or at any domestic or foreign port through which such product is offered for
interstate commerce, or for export or import between the United States and
any foreign port or country." Comp. St. 1913, § 8719.

Section 4 declares:

"That the examination of specimens of foods and drugs shall be made in the Bureau of Chemistry of the Department of Agriculture, or under the direction and supervision of such bureau, for the purpose of determining from such examinations whether such articles are adulterated or misbranded within the meaning of this act; and if it shall appear from any such examination that any of such specimens is adulterated or misbranded within the meaning of this act, the Secretary of Agriculture shall cause notice thereof to be given to the party from whom such sample was obtained. Any party so notified shall be given an opportunity to be heard, under such rules and regulations as may be prescribed as aforesaid, and if it appears that any of the provisions of this act have been violated by such party, then the Secretary of Agriculture shall at once certify the facts to the proper United States district attorney, with a copy of the results of the analysis or the examination of such article duly authenticated by the analyst or officer making such examination, under the oath of such officer. After judgment of the court, notice shall be given by publication in such manner as may be prescribed by the rules and regulations aforesaid." Comp. St. 1913, § 8719.

Section 5 declares:

"That it shall be the duty of each district attorney to whom the Secretary of Agriculture shall report any violation of this act, or to whom any health or food or drug officer or agent of any state, territory, or the District of Columbia shall present satisfactory evidence of any such violation, to cause appropriate proceedings, to be commenced and prosecuted in the proper courts of the United States, without delay, for the enforcement of the penalties as in such case herein provided." Comp. St. 1913, § 8720.

Section 12 (Comp. St. 1913, § 8728) declares, among other things, that the word "person," as used in the act, shall be construed to import both the plural and the singular, as the case demands, and shall include corporations, companies, societies, and associations.

The information filed in this case by the United States attorney under the foregoing provisions recites that the information is filed with leave of court first had and obtained, and—

"gives the court here to understand and be informed, upon the oath of Abraham L. Knisely and Duncan A. McIntyre, of Fred Nelson, and of Daniel N. Walsh, whose affidavits are hereto attached and made a part hereof as follows, to wit. * * *"

The information then charges that the defendant a corporation organized under the laws of the state of Washington, with its principal office and place of business in the city of Spokane, did, on or about the 22d day of November, 1912, contrary to the provisions of the foregoing act, ship and deliver for shipment in interstate commerce from the city of Spokane, state of Washington, to the city of Cœur d'Alene, in the state of Idaho, consigned to Nelson Bros. at Cœur d'Alene, in the state if Idaho, certain cases containing eggs, and that the article of food so shipped was misbranded.

To the information are attached the four affidavits therein referred to. The first two were taken before a notary public in the state of Oregon, the third before a notary public in the state of Idaho, and last before the clerk of the District Court of the United States for the Northern District of West Virginia. The defendant has appeared specially and moved to quash the information, on the grounds, first,

that the affidavits thereto attached fail to show probable cause for the prosecution and are insufficient to support the information; and, second, because the information does not charge a crime under the act of Congress in question.

[1] At common law an information might be filed by the Attorney General simply on his oath of office and without verification; and it has generally been held in this country, following the common-law rule, that verification of an information by the prosecuting officer is unnecessary, unless required by some statutory or constitutional provision. There is no law of the United States requiring verification of informations by the prosecuting officer, but a verification of some kind is no doubt indispensable under the fourth amendment to the Constitution, where a warrant of arrest is sought or applied for. See Weeks v. United States, 216 Fed. 292, 132 C. C. A. 436, L. R. A. 1915B, 651, decided by the Circuit Court of Appeals for the Second Circuit June 18, 1914, where this question is fully considered. Inasmuch as this prosecution is against a corporation, where no warrant of arrest is applied for or can be issued, I am of opinion that an information filed by the United States attorney under the sanction of his official oath, and without verification, would be sufficient. But the information under consideration was not so filed, for it expressly states upon its face that it is upon the oath of the several parties named in the annexed affidavits. Unless I am at liberty to consider these affidavits, therefore, the information has no sanction whatever.

[2] As already stated, the three principal affidavits were taken before notaries public in other states, and the fourth, standing alone, is of no avail. The question therefore arises: Can these affidavits, taken before notaries, be considered by the court? I am of opinion that they cannot. In United States v. Curtis, 107 U. S. 671, 673, 2 Sup. Ct. 507, 509, 27 L. Ed. 534, the court said:

"So that the underlying question is whether the notary public, whose commission is from the state, was, at the respective dates of the oaths taken by Curtis, authorized by the laws of the United States to administer such oaths. This question we are constrained to answer in the negative. We are not aware of any act of Congress which gave such authority to notaries public in the different states at the several dates given in the indictment. The Assistant Attorney General insists that such authority may be found in section 1778 of the Revised Statutes, which declares: 'In all cases in which, under the laws of the United States, oaths or acknowledgments may now be taken or made before any justice of the peace of any state or territory, or in the District of Columbia, they may hereafter be also taken or made by or before any notary public duly appointed in any state, district, or territory, or any of the commissioners of the Circuit Courts, and, when certified under the hand and official seal of such notary or commissioner, shall have the same force and effect as if taken or made by or before such justice of the peace.' The authority of the notary to administer these oaths to Curtis cannot be derived from that section, unless at the dates in question they could, under the laws of the United States, have been taken before justices of the peace in Missouri. But the latter officers had no such authority by any federal statute to which our attention has been called, or which we are able to find. Section 1778, so far as notaries public are concerned, embodies the substance of similar provisions in the acts of September 16, 1850 (chapter 52), and July 29, 1854 (chapter 159), and section 20 of the act of June 22, 1874 (chapter 390). But nothing in these acts, even if they remained in force

after the adoption of the Revised Statutes, supports the authority exercised by the notary public who administered these oaths to defendant.

"Counsel for the United States further insists that a proper construction of section 1778 will authorize a notary public in *any* State to administer oaths to officers of national banking associations, when making reports to the Comptroller of the Currency, if justices of the peace may lawfully do so in this District. But in our judgment no such interpretation of that provision is admissible. What Congress intended by that section was to give notaries public in their respective states the same authority, in the administration of oaths, as is given, under the laws of the United States, to justices of the peace in the same states, and to notaries public in this District the same authority, in administering oaths, which, under the laws of the United States, might be exercised by justices of the peace in this District. We have seen, however, that to justices of the peace, in the several states, such authority had not been given by any provision in the Revised Statutes, or by any act of Congress prior to their adoption. Nor can any support for the indictment be derived from the act of August 15, 1876 (chapter 304), which declares 'that notaries public of the several states, territories, and the District of Columbia, be, and they are hereby, authorized to take depositions, and do all other acts in relation to taking testimony to be used in the courts of the United States, take acknowledgments and affidavits, in the same manner and with the same effect as commissioners of the United States Circuit Court may now lawfully take or do.' The power of commissioners of the Circuit Court did not, at the passage of that act, extend to the taking of oaths to reports by officers of national banks. They could take affidavits when required, or allowed in any civil cause in a Circuit or District Court (Rev. Stat. § 945 [Comp. St. 1913, § 1571]; Act Feb. 20, 1812, c. 25; Act March 1, 1817, c. 30); or administer oaths where, in the same state, under the laws of the United States, oaths in like cases could be administered by justices of the peace (Rev. Stat. § 1778); or they could take evidence, affidavits, and proof of debts in proceedings in bankruptcy (Rev. Stat. §§ 5003, 5076; Act March 2, 1867, c. 176; section 3 of the act of July 27, 1868, c. 258; section 20 of the act of June 22, 1874, c. 390). But the authority of commissioners did not extend to such oaths as were administered to Curtis."

[3] It follows from this decision that a notary public has no authority under the laws of the United States to administer any oaths in connection with criminal prosecutions. The United States attorney frankly conceded this on the argument, but contended that inasmuch as this is a prosecution against a corporation, commenced by summons, it must be deemed to be a civil action. To this proposition I cannot yield assent. All persons, whether natural or artificial, stand upon an equal footing before the criminal laws of the country. True, a corporation, by reason of its inherent nature, cannot commit certain crimes, and may not be arrested or imprisoned; but a proceeding against it for the violation of a criminal statute is, and must be, in its very nature, a criminal proceeding with all the incidents of such a proceeding until the Legislature has declared otherwise.

Believing, therefore, that the information in itself is insufficient, because not under the sanction of the official oath of the United States district attorney, and that I may not consider the affidavits of notaries thereto attached, the motion to quash must be granted; and it is so ordered.