SIMPSON v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1917.)

No. 2937.

**1.** CRIMINAL LAW ☞1032(1)—APPEAL—RESERVATION OF GROUNDS OF REVIEW —OBJECTIONS TO INFORMATION.

Unless an information is void, an objection that it was not made on the oath of the prosecuting officer, but solely upon oath of witnesses by affidavit, some of which were taken before notaries public, cannot be raised for the first time on appeal, unless a refusal to consider it would shock the judicial conscience.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2627, 2653.]

**2.** INDICTMENT AND INFORMATION ☞196(4)—OBJECTIONS—WAIVER BY ANSWER.

The objection that an information was not made on the oath of the prosecuting officer, but on the oaths of witnesses by affidavit, some of which were taken before notaries public, was purely technical, and was waived by pleading to the information without raising the objection.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 632.]

**3.** DRUGGISTS ☞12—SHIPMENT OF MISBRANDED DRUGS—INFORMATION.

An information charging an interstate shipment of drugs misbranded, in that the package and an accompanying circular contained false and fraudulent statements, alleged that the shipment was made by S., the defendant, trading as S.'s Medical Institute, that the name of the article given on the label was S.'s Nerve Compound, and that the representations were false and fraudulent, in that they were applied to such article knowingly and in reckless and wanton disregard of their truth and falsity. *Held*, that the information sufficiently showed that it was defendant's knowledge and defendant's wanton and reckless disregard of the truth that was intended to be charged, especially in view of Rev. St. § 1025 (Comp. St. 1916, § 1691), providing that an indictment shall not be affected by any defect or imperfection in matter of form not prejudicing defendant.

[Ed. Note.—For other cases, see Druggists, Cent. Dig. § 11.]

**4.** INDICTMENT AND INFORMATION ☞71—SUFFICIENCY OF ACCUSATION.

The rule applicable to an information is no less liberal than that prescribed for indictments by Rev. St. § 1025, and its averments of facts constituting the offense need be only so certain and specific as fairly to inform defendant of the crime intended to be alleged, and to make the judgment a complete defense to a second prosecution for the same offense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 144, 174, 193, 194.]

**5.** DRUGGISTS ☞12—SHIPMENT OF MISBRANDED DRUGS—INFORMATION.

An information for shipping drugs misbranded, in that the label of the package containing the drug and an accompanying circular contained false and fraudulent statements regarding their curative effect, alleged that the

---

shipment consisted of certain packages, that the packages contained the circular or pamphlet described, and that one of the alleged misrepresentations appeared on the label, and the other was included in such circular. *Held*, that it sufficiently alleged that the misrepresentations charged were intended to accompany the bottles containing the drugs into the hands of the consumers.

[Ed. Note.—For other cases, see Druggists, Cent. Dig. § 11.]

6. DRUGGISTS ⬳12—SHIPMENT OF MISBRANDED DRUGS—EVIDENCE.
    In such prosecution, evidence as to the falsity of the representations and defendant's knowledge thereof *held* to justify the denial of a directed verdict.

[Ed. Note.—For other cases, see Druggists, Cent. Dig. § 11.]

7. DRUGGISTS ⬳12—SHIPMENT OF MISBRANDED DRUGS—"REMEDY."
    The term "remedy," used in connection with drugs claimed to have been misbranded by reason of false statements concerning their curative effects, implied a curative tendency, though not guaranteeing a cure.

[Ed. Note.—For other cases, see Druggists, Cent. Dig. § 11.

For other definitions, see Words and Phrases, First and Second Series, Remedy.]

Error to the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Charles M. Simpson, trading as Dr. C. M. Simpson's Medical Institute, was convicted of an offense, and he brings error. Affirmed.

Jas. E. Mathews, of Cleveland, Ohio, for plaintiff in error.

F. B. Kavanagh, Asst. U. S. Atty., of Cleveland, Ohio.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. Plaintiff in error was convicted, upon trial by jury, under an information charging the interstate shipment of certain drugs in violation of Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768, as amended by Act Aug. 23, 1912, c. 352, 37 Stat. 416 (Comp. St. 1916, §§ 8717–8728), alleged to be misbranded in that the label of the carton or package containing the drug (as well as a circular therein) contained false and fraudulent statements regarding the curative or therapeutic effect of the drugs. But two grounds for reversal are presented.

1. The first ground is that the information was insufficient in law. It was accompanied by affidavits of four persons, relating in part to the actual shipment of the offending articles and the presence in the inclosed packages of the label and circular referred to, and in part to the chemical analysis of the drugs and the alleged falsity of the claims made as to their therapeutic effect. The information was not sworn to, but states that the court was "given to understand and be informed upon the oaths of * * * whose affidavits are hereto attached and made a part hereof, as follows, to wit." Two of the affidavits were sworn to before notaries public. It is urged that the information was insufficient because not upon the oath of the prosecuting officer, but solely upon oaths of the witnesses by affidavit, and that oaths taken before notaries public were invalid.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1, 2] We need not consider whether the objection would have been good had it been made in the court below. Defendant in fact pleaded not guilty to the information, without demurring or moving to quash, and the record does not indicate that the attention of the district court was ever directed to the alleged insufficiency of the information. Unless it was void, the question presented cannot for the first time be raised in the appellate court, unless a refusal to so consider it would shock the judicial conscience. Keliher v. United States (C. C. A. 1) 193 Fed. 8, 10, 114 C. C. A. 128. Had there been no affidavit of witnesses, the information would not have been void for lack of the oath of the prosecuting counsel (Weeks v. United States [C. C. A. 2] 216 Fed. 292, 132 C. C. A. 436, L. R. A. 1915B, 651); and we do not regard the information as showing that it was filed without investigation by the District Attorney. See Frank v. United States (C. C. A. 6) 192 Fed. 864, 867, 113 C. C. A. 188. The objection is purely technical and without merit, and was waived by pleading to the information without raising objection. People v. Harris, 103 Mich. 473, 61 N. W. 871; People v. Turner, 116 Mich. 390, 74 N. W. 519; Bartlett v. State, 28 Ohio St. 669.

[3, 4] It is also urged that the information does not charge defendant with knowledge of the alleged false and fraudulent character of the representations made. We assume, for the purposes of this opinion, that such allegation is necessary. The gist of these representations, so far as need now be stated, is that the article was "a valuable remedy for lost nervous strength and treatment of all diseases which are really the result of diseases of the brain, spinal cord, medulla oblongata and the nerves given off from each of them." The information alleged that these representations were (omitting the words we have bracketed) "false and fraudulent in this, that the same were applied [by defendant] to said article knowingly, and in reckless and wanton disregard [on defendant's part] of their truth or falsity, so as to represent falsely and fraudulently to the purchaser thereof, and create in the minds of purchasers thereof an impression and belief that it was," etc.

The criticism we are now considering would be fully met had the information actually contained (as it did not) the words above bracketed. But the defect was not substantial; it was only formal. The information charged that the shipment was made by defendant "trading as Dr. C. M. Simpson's Medical Institute," and that the name of the article given on the label of the carton was "Dr. C. M. Simpson's Cerebro-Spinal Nerve Compound." The natural construction would be that it was defendant whose knowledge and reckless and wanton disregard of the truth was intended to be charged. The federal statute (Rev. Stat. 1025 [Comp. St. 1916, § 1691]) expressly provides that an indictment shall not be affected "by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 40 L. Ed. 606; Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; Tyomies Pub. Co. v. United States (C. C. A. 6) 211 Fed. 385, 389, 128 C. C. A. 47. The rule applicable to an in-

formation is no less liberal. Its averments of facts constituting the offense need be only so certain and specific as fairly to inform defendant of the crime intended to be alleged, and as to make the judgment of conviction or acquittal thereon a complete defense to a second prosecution of the defendant for the same offense. United States v. Hess, 124 U. S. 483, 486, 487, 8 Sup. Ct. 571, 31 L. Ed. 516; Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667; Bennett v. United States (C. C. A. 6) 194 Fed. 630, 632, 114 C. C. A. 402; Hocking Valley R. R. Co. v. United States, 210 Fed. 735, 127 C. C. A. 285. It is clear that the information fulfilled these requirements.

That the criticism urged is purely technical and without merit, in that defendant understood that his own intent was in issue, is affirmatively shown by the fact that at the opening of the trial defendant admitted that he made the shipment in question, that it contained the cartons, bottles, and wrappers exhibited in court, and that he was the proprietor and sole owner of the "Dr. C. M. Simpson Institute;" and by the fact that, as a witness in his own behalf, and under examination by his own counsel, he testified directly to the absence of intentional false branding and fraudulent intent.

[5] It is finally urged that the information does not show that the alleged misrepresentations were in the "ultimate container," that is to say, in the package as it reaches the consumer. McDermott v. Wisconsin, 228 U. S. 115, 130, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, Ann. Cas. 1915A, 39. This objection, as well as the preceding ones, must be considered in the light of the fact that the question was not raised below. We think the information should fairly be interpreted to mean that the misrepresentations were intended to accompany the bottles into the hands of the consumers. It alleged that the shipment consisted of "certain packages," and that the packages contained the circular or pamphlet later described therein; that one of the alleged misrepresentations appeared "on the label of the carton aforesaid," and that the other was "included in the circular or pamphlet aforesaid." It is matter of common knowledge that proprietary medicines in bottles are usually sold to the consumer in cartons, and that the latter usually contain circulars or other advertising matter. We are not impressed with the suggestion that the circular was charged to have been inside "the article of drugs."

[6, 7] 2. The remaining complaint is addressed to the denial of defendant's motion to direct verdict in his favor. We think the motion was properly denied. It seems unnecessary to set out in full the exact language of the representations alleged to be contained in the packages. It seems enough to say that defendant's compound was not only represented generally to be a valuable remedy for the treatment of all diseases "resulting from diseases of the brain, spinal cord and medulla oblongata, and the nerves given off from each," "a remarkable discovery for the treatment of all nervous diseases," but also a "remarkable discovery for heart troubles," as well as a "most valuable remedy for nervous prostration, mania, melancholia and neurasthenia." There was substantial testimony from competent med-

ical witnesses that there was no remedy applicable to all the diseases mentioned; that medical science and medical experience furnish no support for the broad claims made for defendant's remedy; that "there is no one medicine that will prove a valuable remedy for all" the diseases enumerated. There was further substantial testimony from competent witnesses that bromides, which constitute a prominent ingredient in defendant's remedy, are sedative in their nature and, in ordinary doses, not stimulating; that while thus helpful in quieting an exalted or excited state of the nerves, as in many cases, including some cases of mania, they are not only not helpful, but are positively injurious, in depressed conditions, as in melancholia; that there is no one remedy for all spinal diseases, nor for all cases of neurasthenia, or heart trouble, nor for all cases of melancholia or of mania; that some diseases of the heart require sedatives, others stimulants; that the same is the case with neurasthenia and certain other nervous diseases mentioned; and that in some cases of nervous prostration and other nervous affections the administering of sedatives or depressants is harmful; that bromides are not suitable to the treatment of the mentally and physically depressed. There was further testimony to the same effect as to others of the diseases included, either specifically or by general description, in the claims made for the remedy; also that defendant's compound was dangerous to intrust to the hands of a layman. Aside from defendant's own testimony, there was no competent medical testimony in oposition to that presented by the government, to the effect that the claims made for the medicine were contrary to all medical science. The defendant's proposition that the presence of ammonium-carbonate neutralized the effect of the bromides as depressants was denied by medical witnesses for the government. True, it appeared beyond dispute that bromides are beneficial, at least as a palliative in quieting the nerves and inducing sleep, in ordinary cases of nervous excitability; and there was testimony on the part of the defense that several persons had received benefit, indeed, many of them claimed to have been cured, by the use of defendant's remedy. But such testimony, at the most, bore only upon the question of fact whether the alleged representations were, as made, false and fraudulent. There was still room for a conclusion that substantial mischief resided in the claim of a universally efficacious remedy for the numerous and widely prevalent maladies in question; for the term "remedy" must at least imply a curative tendency, although not of course guaranteeing a cure. The defendant was a graduate physician, and the jury were justified, under all the evidence in the case, in presuming that he knew the falsity of the broad claim made for his compound.

The brief of defendant's counsel criticizes the admission of certain testimony, although we do not understand that such admission is relied on for reversal. We may say, however, that we have examined all the criticisms which are made the subject of either exception or assignment, and find no error.

The judgment of the district court is accordingly affirmed.