## UNITED STATES v. QUARITIUS.

(District Court, E. D. New York. September 10, 1920.)

1. **Indictment and information ⊕═42—Information may be filed pending hearings by commissioner.**

    An information can be filed by the United States attorney while hearings upon the charge are being held before the United States commissioner.

2. **Indictment and information ⊕═3—Offenses not infamous may be prosecuted on information filed with leave of court.**

    Offenses which are not infamous, and which do not involve moral turpitude, such as violations of the National Prohibition Law, may be prosecuted on information filed by the United States district attorney with leave of court.

3. **Indictment and information ⊕═40—Government must show probable cause of guilt to obtain leave to file information.**

    Before the court will grant leave to file an information, the government must present probable cause of guilt.

4. **Indictment and information ⊕═40—Leave to file information withheld, where only evidence was obtained by unlawful search.**

    Where the hearing before the United States commissioner disclosed that the only evidence against defendant which the government had was procured by an unlawful search of the premises, contrary to Const. Amend. 4, leave to file the information will be denied, even though the evidence so obtained showed probable cause of guilt.

Application by the United States for leave to file an information against Harold W. Quaritius, charging him with maintaining a nuisance, in violation of the National Prohibition Law. Application denied.

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Leroy W. Ross, U. S. Atty., and John T. Eno, Asst. U. S. Atty., both of Brooklyn, N. Y.

Alexander S. Drescher, of Brooklyn, N. Y., for defendant.

GARVIN, District Judge.   The government has applied for leave to file an information against defendant upon the charge of maintaining a nuisance in violation of the National Prohibition Law, commonly known as the Volstead Act (Act Oct. 28, 1919, c. 85, 41 Stat. 305). Prior thereto the defendant, through counsel, made application for leave to be heard when the government should present an information and ask for leave to file the same.

It is asserted, and not controverted, that on or about July 15, 1920, a warrant was issued for the arrest of the defendant upon the charge of unlawfully maintaining a common nuisance, as prohibited by the Volstead Act, and at the same time a warrant was issued for one Trainor, defendant's employé, for having liquor in his possession. The defendant and Trainor were arraigned before Hon. Henry D. Barmore, a United States commissioner, and a hearing was had on July 22d.   On August 5th the commissioner rendered a decision, in which he found as follows:

"In this case evidence is that federal prohibition agents entered store and asked for a 'highball.' Defendant Trainor was in charge, and declined to serve same, and stated that he had no liquor. After waiting about the place for a while, said agents, although witnessing no violation of the Prohibition Act and having no evidence or reason to believe that any violation was taking place, undertook to and did, without warrant or authority, go behind bar and search and discover and seize a bottle containing a red fluid, which they believe to be wine.   There is no evidence as to its alcoholic content; or that it had any alcoholic content.

"They then made further search, and in a closet opening upon a passageway which connected the saloon with a grocery store or ship chandlery, found a quart bottle containing a colorless liquid, which they assumed to be alcohol, a pint bottle of brown liquid, which they assumed to be whisky, and a jug containing a green liquid, which they assumed to be créme de menthe.   No evidence was offered that these were in fact intoxicating liquors.   The door to this closet was marked 'Private.'

"The defendant Quaritius, who is the manager of the stores, was not present at this time.   Quaritius testified that he is not owner or proprietor, but that his mother is.   This evidence is uncontradicted.   He further testified that he did not know of the existence of the supposed liquor; that, if there, it must have been there a long time.   It further appears that part of the living quarters or dwelling of the family are on this same floor.

"There is no evidence of any selling or keeping for sale, such as would constitute a nuisance."

These facts, as found by the commissioner, are not disputed by the government.

[1, 2]   It has been held by this court that, while hearings are being held before a United States Commissioner upon a charge, the United States attorney may cause an information to be filed.   U. S. v. Achen, 267 Fed. 595, Eastern District of New York, decided March 31, 1920. In that case the court cited, among other authorities, U. S. v. Maxwell, Fed. Cas. No. 15,750, in which Judge Dillon said:

"We are of the opinion, therefore, that offenses not capital or infamous may in the discretion of the court be prosecuted by information.   We cannot

recognize the right of the district attorney to proceed on his own motion, and shall require probable cause of guilt to appear by the oath of some credible person before we will allow an information to be filed and a warrant of arrest to issue. But with these safeguards there is no more reason to fear an oppressive use of information than there is reason to fear an abuse of the powers of a grand jury. Where the accusation is a grave one, or where the charge seems to be doubtful, the court will refuse leave to file an information and compel the district attorney to lay it before a grand jury. But it is well known that the internal revenue laws have created a large number of minor offenses, many of them involving no moral turpitude, and that the cost of proceeding by a grand jury and the delay are burdensome and inconvenient both to the government and the defendant. In this class of cases, most of which are not defended, great and unnecessary expense will be saved by proceeding by information, and we not only think the practice legal, but one which, in cases of this kind, should, with the restrictions above mentioned, be adopted and encouraged, rather than condemned."

[3, 4] It thus appears that the government must present probable cause of guilt before the court is warranted in permitting an information to be filed. But there must be more than probable cause of guilt. No information should be filed where it clearly appears that the only evidence which the government can offer has been obtained as a result of a violation of the constitutional rights of the defendant. It will not be contended that, if no evidence was presented, except hearsay evidence, the court should permit an information to be filed. No prosecution should be instituted, and the defendant subjected to the inconvenience, the expense, and perhaps the disgrace, connected therewith, aggravated when a trial is had, if it is clearly apparent that the result of such trial can only be a direction of a verdict for the defendant, by reason of the fact that the government must rely upon evidence that is incompetent and cannot be received. The Fourth Amendment to the Constitution reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The learned commissioner properly observed in his decision:

"The purpose of this is evident and salutary. It is designed to prohibit and prevent wanton, unnecessary, and burdensome interference with the people in the enjoyment of their freedom and security, without, however, depriving governmental agencies of a valuable and necessary aid in the detection of crime, when proper cause for its employment exists."

As the agents of the government had no reason to believe that any violation had taken place, their search of the premises without a warrant and the seizure resulting therefrom was a clear violation of the Fourth Amendment to the Constitution, and no conviction could be had upon evidence so obtained. The rights guaranteed to the people by the Fourth Amendment, supra, cannot be disregarded. As a part of the fundamental law of the land, they were granted as a safeguard against oppression. By this the poor and friendless are protected, as well as the rich and powerful. The Constitution knows no distinc-

tion. It applies to all, and the courts will scrupulously regard its provisions.

In justice to the learned United States attorney, it should be observed that, after careful inquiry, upon ascertaining that no further evidence was available, he applied for leave to withdraw the application. It is believed, however, that, in view of the importance of the question involved, a judicial determination should be had, to the end that any misunderstanding of the meaning of this amendment may be removed. This court will not make an order allowing an information to be filed, where it is apparent that the prosecution cannot prevail. Application denied.