## ALBRECHT ET AL. *v.* UNITED STATES.

ERROR TO THE UNITED STATES DISTRICT COURT FOR THE EAST-
ERN DISTRICT OF ILLINOIS.

No. 9. Argued November 23, 1926.—Decided January 3, 1927.

1. An arrest under a federal warrant based on affidavits verified before a notary public—a state official without authority to administer oaths in federal criminal proceedings—is in violation of the Fourth Amendment. P. 5.
2. An information can not be filed by a United States attorney without leave of court. P. 5.
3. The official oath of the United States Attorney may be accepted as sufficient verification of an information. P. 6.
4. Where an information gave the court to understand and be informed etc., " on affidavits " referred to, the invalidity of the affidavits and their use with the information as a basis for applying for and issuing warrants of arrest, did not affect the validity of the information. P. 6.
5. Where the information is valid but the warrant of arrest is based on insufficiently verified affidavits, the irregularity of the warrant may be waived. P. 8.
6. Mere giving of a bail bond without objection to the warrant does not waive invalidity of the warrant, or operate as a general appearance. P. 9.
7. Objection to arrest upon the ground that affidavits supporting the warrant are defective should be by motion to quash the warrant, not the information. P. 9.
8. A motion to quash a warrant issued upon insufficiently verified affidavits is too late if the defendant is in court and the affidavits have been amended before the motion is filed. P. 10.

42847°—27——1

1

9. Punishing the same person for the distinct offenses of possessing and then selling the same liquor in violation of the Prohibition Act is not double punishment violating the Fifth Amendment. P. 11.

Affirmed.

ERROR to a judgment of the District Court sentencing the plaintiffs in error upon each of nine counts of an information charging violations of the Prohibition Act.

Mr. *Charles A. Houts*, with whom *Messrs. Samuel W. Baxter* and *D. E. Keefe* were on the brief, for the plaintiffs in error.

An information, when made the basis of an application for warrant of arrest, must be supported by an affidavit showing probable cause. 2 Op. Atty Gen. 266; *Weeks* v. *U. S.* 216 Fed. 292; *United States* v. *Michalski,* 265 Fed. 839; *Keilman* v. *United States,* 284 Fed. 845; *United States* v. *Illig,* 288 Fed. 939; *United States* v. *McDonald,* 293 Fed. 433; *In re Gourdian,* 45 Fed. 842; *United States* v. *Tureaud,* 20 Fed. 621; *Ex parte Burford,* 3 Cranch 448. The affidavits filed originally with the information were sworn to before a notary public and were therefore insufficient, *United States* v. *Schallinger Produce Co.,* 230 Fed. 20. The affidavits which were on file at the time the warrant issued were nullities, and the information was unsupported by any affidavit which would be sufficient under the laws of the United States. The affidavits could not be lawfully amended. *United States* v. *Tureaud, supra; United States* v. *Michalski, supra; Rice* v. *Ames,* 180 U. S. 371; *United States* v. *Morgan,* 222 U. S. 275; *People* v. *Clark,* 280 Ill. 160; *People* v. *Honaker,* 281 Ill. 291; *People* v. *Powers,* 283 Ill. 438.

The objection that the information was filed without proper affidavit, or proof of probable cause, was timely and properly made by the motion to quash. *United States* v. *Tureaud, supra; Weeks* v. *United States, supra;*

*Sampson* v. *United States,* 241 Fed. 841; *United States* v. *McDonald, supra; United States* v. *Schallinger Produce Co., supra.* Amending the affidavits after the issuance and execution of the warrant, by substituting new affidavits, did not have the effect of validating the information as originally filed, and the arrest made thereon, prior to the amendment of the affidavits. *United States* v. *Tureaud, supra; Rex* v. *Inhab. of Barton,* 9 Dowl. 1021; Coles Crim. Informations, p. 51; *United States* v. *Casino,* 286 Fed. 976; 1 R. C. L. 774.

The affidavit itself must be sufficient to state facts which justify the issuance of a warrant and the officer is required by law to satisfy himself of the sufficiency of the affidavit and let the circumstances call for the issuance of a warrant. *United States* v. *Borkoski,* 268 Fed. 408; *Ripper* v. *United States,* 178 Fed. 24; *United States* v. *Kaplan,* 286 Fed. 963.

Neither count of the information charges an offense under the laws of the United States.

The judgment and sentence with respect to certain counts is unlawful as imposing double punishment. *Muncy* v. *United States,* 289 Fed. 780.

*Solicitor General Mitchell,* with whom *Assistant Attorney General Willebrandt* and *Mr. John J. Byrne,* Attorney in the Department of Justice, were on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This direct writ of error to the federal court for eastern Illinois, was allowed under § 238 of the Judicial Code prior to the amendment of February 13, 1925. Albrecht and his associates were sentenced to either fine or imprisonment upon each of nine counts of an information charging violations of the National Prohibition Act.

There is no contention that the offences charged could not be prosecuted by information. See *Brede* v. *Powers,* 263 U. S. 4, 10; *Rossini* v. *United States,* 6 F. (2d) 350. The claims mainly urged are that, because of defects in the information and affidavits attached, there was no jurisdiction in the District Court and that rights guaranteed by the Fourth Amendment were violated. Several important questions of practice are presented which have not been passed upon by this Court, and on which there has been diversity of opinion in the lower courts, due in part to language in the opinions in *United States* v. *Morgan,* 222 U. S. 274, 282, and in *United States* v. *Thompson,* 251 U. S. 407, 413–414.

The information recites that it was filed by the United States Attorney with leave of the court; and the truth of this allegation has not been questioned. A bench warrant issued; and the marshal executed it by arresting the defendants. When they were brought into court, each gave bond to appear and answer; was released from custody immediately; and was not thereafter in custody by virtue of the warrant or otherwise. At the time of giving the bonds, no objection was made to either the jurisdiction or the service by execution of the warrant; and nothing was done then indicating an intention to enter a special appearance. On a later day, the defendants filed a motion to quash the information; declared in the motion that they "specifically limit their appearance in the cause for the purpose of interposing" it; and protested that the court was without jurisdiction. The main ground urged in support of the objection was that the information had not been verified by the United States Attorney; that it recited he "gives the court to understand and be informed, on the affidavit of I. A. Miller and D. P. Coggins"; and that these affidavits, which were annexed to the information, had been sworn to before a notary public—a state official not authorized to admin-

ister oaths in federal criminal proceedings. Compare *United States* v. *Hall*, 131 U. S. 50. With leave of court, new oaths to the affidavits were immediately sworn to before the Deputy Clerk of the Court, and additional affidavits, also sworn to before him, were filed. Thereupon, a new motion to quash, setting forth the same grounds, was filed by the defendants; and this motion extended to both the information and the warrant. It also was denied; and a demurrer interposed upon the same ground was overruled. Then, upon a plea of not guilty, the defendants were tried, with the result stated; and a motion in arrest of judgment was denied.

As the affidavits on which the warrant issued had not been properly verified, the arrest was in violation of the clause in the Fourth Amendment which declares that " no warrants shall issue but upon probable cause, supported by oath or affirmation." See *Ex parte Burford,* 3 Cranch 448, 453; *United States* v. *Michalski,* 265 Fed. 839. But it does not follow that because the arrest was illegal, the information was or became void. The information was filed by leave of court. Despite some practice and statements to the contrary, it may be accepted as settled, that leave must be obtained; and that before granting leave, the court must, in some way, satisfy itself that there is probable cause for the prosecution.[1] This is done some-

---

[1] The great majority of the lower courts dealing with the subject have insisted that the district attorney secure leave of court before filing informations, and have refused to grant leave except upon a showing of probable cause. *United States* v. *Shepard,* Fed. Cas. No. 16,273; *United States* v. *Maxwell,* Fed. Cas. No. 15,750; *United States* v. *Baugh,* 1 Fed. 784; *United States* v. *Reilley,* 20 Fed. 46; *United States* v. *Smith,* 40 Fed. 755; *United States* v. *Schurman,* 177 Fed. 581; *United States* v. *Quaritius,* 267 Fed. 227. In some districts the United States attorney has been permitted to file an information upon a purely formal allegation of leave, but the court determined the question of the existence of probable cause upon a motion of the defendant to withdraw leave. *United States* v. *Simon,* 248 Fed. 980;

times by a verification of the information, and frequently by annexing affidavits thereto. But these are not the only means by which a court may become satisfied that probable cause for the prosecution exists.[2] The United States Attorney, like the Attorney General or Solicitor General of England, may file an information under his oath of office; and, if he does so, his official oath may be accepted as sufficient to give verity to the allegations of the information. See *Weeks* v. *United States,* 216 Fed. 292, 302.

It is contended that this information was not presented on the official oath of the United States Attorney; that instead of informing on his official oath, he gave " the court to understand and be informed on the affidavit[s] " referred to; and that, for this reason, the information is to be likened, not to those filed in England by the Attorney General or the Solicitor General, but to those exhibited there by Masters of the Crown upon information of a private informer; that the latter class of informa-

---

*Yaffee* v. *United States,* 276 Fed. 497. The statements in *Ryan* v. *United States,* 5 F. (2d) 667, and *Miller* v. *United States,* 6 F. (2d) 463, that the United States attorney may file informations as of right, are based upon an incidental remark in *United States* v. *Thompson,* 251 U. S. 407, 413–414, which must be disregarded.

[2] A few cases have considered a verification essential to the validity of an information. *United States* v. *Tureaud,* 20 Fed. 621; *United States* v. *Strickland,* 25 Fed. 469. Compare *Johnston* v. *United States,* 87 Fed. 187; *United States* v. *Wells,* 225 Fed. 320. See *United States* v. *Morgan,* 222 U. S. 274, 282. The opposite conclusion was reached after great deliberation in *Weeks* v. *United States,* 216 Fed. 292, since followed by many cases. Reference may be made to *United States* v. *Adams Express Co.,* 230 Fed. 531; *Simpson* v. *United States,* 241 Fed. 841; *Abbott Bros. Co.* v. *United States,* 242 Fed. 751; *Kelly* v. *United States,* 250 Fed. 947; *Brown* v. *United States,* 257 Fed. 703; *United States* v. *Newton Tea & Spice Co.,* 275 Fed. 394; *United States* v. *McDonald,* 293 Fed. 433; *Vollmer* v. *United States,* 2 F. (2d) 551; *Wagner* v. *United States,* 3 F. (2d) 864; *Poleskey* v. *United States,* 4 F. (2d) 110; *Gray* v. *United States,* 14 F. (2d) 366.

tions were required by Stat. 4 & 5, W. & M. C. 18, to be supported by affidavit of the person at whose instance they were preferred; that this requirement for informations of that character became a part of our common law; and, that, because the affidavits were not properly verified, the information could not confer jurisdiction.

The practice of prosecuting lesser federal crimes by information, instead of indictment, has been common since 1870.[3] But, in federal proceedings, no trace has been found of the differentiation in informations for such crimes, or of any class of informations instituted by a private informer comparable to those dealt with in England by Stat. 4 & 5, W. & M. C. 18.

The reference to the affidavits in this information is not to be read as indicating that it was presented otherwise than upon the oath of office of the United States Attorney.[4] The affidavits were doubtless referred to in

---

[3] Two different courts, having before them criminal informations, were able to say, as late as 1870, that there had been no use of that procedure known to them up to that time. *United States* v. *Shepard*, Fed. Cas. No. 16,273; *United States* v. *Cultus Joe*, Fed. Cas. No. 15,478. See also Abbott's United States Practice, Vol. II, 177. Story writing in 1833, said that there was very little use of informations except in civil prosecutions for penalties and forfeitures. The Constitution, § 1780. In 1864, Congress passed a statute which provided for a summary criminal proceeding, begun by sworn complaint, in cases involving minor offenses by seamen. Act of June 11, 1864, c. 121, §§ 2, 3, 13 Stat. 124. In 1870 was passed a statute authorizing prosecution by indictment or information for crimes against the franchise. Act of May 31, 1870, c. 114, § 8, 16 Stat. 142. While there was probably a sporadic use of informations in criminal proceedings during the first eighty years of the government, as in *United States* v. *Mann*, Fed. Cas. No. 15,717 (1812), the use did not become general until after 1870. After 1870 prosecutions by information became frequent. See *United States* v. *Waller*, Fed. Cas. No. 16,634; *United States* v. *Maxwell*, Fed. Cas. No. 15,750; *United States* v. *Baugh*, 1 Fed. 784. See also, *Ex parte Wilson*, 114 U. S. 417, 425.

[4] Compare *Simpson* v. *United States*, 241 Fed. 841. Contra, *United States* v. *Schallinger Produce Co.*, 230 Fed. 290.

the information, not as furnishing probable cause for the prosecution, but because it was proposed to use the information and affidavits annexed as the basis for an application for a warrant of arrest. If before granting the warrant, the defendants had entered a voluntary appearance, the reference and the affidavits could have been treated as surplusage, and would not have vitiated the information.[5] The fact that the information and affidavits were used as a basis for the application for a warrant did not affect the validity of the information as such.[6] Whether the whole proceeding was later vitiated by the false arrest remains to be considered.

The invalidity of the warrant is not comparable to the invalidity of an indictment. A person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court. Compare *Ex parte Bain,* 121 U. S. 1. But a false arrest does not necessarily deprive the court of jurisdiction of the proceeding in which it was made. Where there was an appropriate accusation either by indictment or information, a court may acquire jurisdiction over the person of the defendant by his voluntary appearance.[7] That a defendant may be brought before the court by a summons, without an arrest, is shown by the practice in prosecutions against corporations which are necessarily commenced by a summons.[8] Here, the court had juris-

---

[5] Compare *Weeks* v. *United States,* 216 Fed. 292; *Poleskey* v. *United States,* 4 F. (2d) 110; *Miller* v. *United States,* 6 F. (2d) 463. See also *Kelly* v. *United States,* 250 Fed. 947; *Brown* v. *United States,* 257 Fed. 703; *Keilman* v. *United States,* 284 Fed. 845; *Carney* v. *United States,* 295 Fed. 606; *Wagner* v. *United States,* 3 F. (2d) 864.

[6] Compare *Yaffee* v. *United States,* 276 Fed. 497; *Farinelli* v. *United States,* 297 Fed. 198, 199. See *Jordan* v. *United States,* 299 Fed. 298.

[7] See cases cited in note 5, *supra.*

[8] The leading case on the use of summons in criminal prosecutions against corporations in the federal courts is *United States* v. *Kelso,* 86 Fed. 304, followed in *United States* v. *Standard Oil Co.,* 154 Fed.

diction of the subject matter; and the persons named as defendants were within its territorial jurisdiction. The judgment assailed would clearly have been good, if the objection had not been taken until after the verdict.[9] This shows that the irregularity in the warrant was of such a character that it could be waived. Was it waived? And, if not, was it cured?

The bail bonds bound the defendants to " be and appear " in court " from day to day " and " to answer and stand trial upon the information herein and to stand by and abide the orders and judgment of the Court in the premises." It is urged there was a waiver by giving the bail bonds without making any objection. We are of the opinion that the failure to take the objection at that time did not waive the invalidity of the warrant or operate as a general appearance.[10] An objection to the illegality

728; *United States* v. *Virginia-Carolina Chemical Co.*, 163 Fed. 66; *John Gund Brewing Co.* v. *United States*, 204 Fed. 17; *United States* v. *Philadelphia & R. Ry. Co.*, 237 Fed. 292; *United States* v. *Nat. Malleable & S. Castings Co.*, 6 F. (2d) 40.

[9] See *Dowdell* v. *United States*, 221 U. S. 325, 332; *Jordan* v. *United States*, 299 Fed. 298; *Yaffee* v. *United States*, 276 Fed. 497; *United States* v. *McDonald*, 293 Fed. 433, 437. Compare *In re Johnson*, 167 U. S. 120; *Simpson* v. *United States*, 241 Fed. 841; *Abbott Bros. Co.* v. *United States*, 242 Fed. 751.

[10] There has been no discussion, in the federal courts, of the possible effect of a bail bond as a waiver of the right to object to an illegal arrest. In *United States* v. *Shepard*, Fed. Cas. No. 16,273, and *United States* v. *Wells*, 225 Fed. 320, the court quashed informations because of the illegality of the arrest, though the defendants had given bond without objecting to the illegality, but the question of waiver was apparently not pressed upon the courts. The trend of authority in the state courts does not consider that giving bond is a waiver, since the defendant must give bond or go to jail; and will ordinarily have little knowledge of his legal rights. *People* v. *Gardner*, 71 Misc. 335, 130 N. Y. Supp. 202; *State* v. *Simmons*, 39 Kan. 262 (but compare *State* v. *Munson*, 111 Kan. 318). Compare *Solomon* v. *People*, 15 Ill. 291; *State* v. *Hufford*, 28 Ia. 391. See *Eddings* v. *Boner*, 1 Ind. Terr. 173, 179–180. Contra, *State* v. *Wenzel*, 77 Ind.

of the arrest could have been taken thereafter by a motion to quash the warrants, though technically the defendants were then held under their bonds, the warrants having performed their functions. But the first motion to quash was not directed to the invalidity of the warrant. As that motion to quash was directed solely to the information, it could not raise the question of the validity of the warrant.[11] The motion to quash the warrant was not made until after the government had filed properly verified affidavits by leave of court. Thereby the situation had been changed. The affidavits then on file would have supported a new warrant, which, if issued, would plainly have validated the proceedings thenceforward. Compare *In re Johnson,* 167 U. S. 120. There was no occasion to apply for a new warrant, because the defendants were already in court.[12] The defect in the proceeding by which they had been brought into court had been cured. By failing to move to quash the warrant before the defect had been cured, the defendants lost their right to object. It is thus unnecessary to decide whether it would have been proper to allow the amendment, and deny the mo-

---

428. It is of course possible that giving bail plus very little else may amount to a waiver. *Ard* v. *State,* 114 Ind. 542; *State* v. *McClain,* 13 N. Dak. 368.

[11] There has been confusion as to the proper method of taking an objection to an illegal arrest. Some cases in the lower federal courts have apparently allowed it to be taken by a motion to quash the information or indictment. *United States* v. *Illig,* 288 Fed. 939. Compare *United States* v. *Tureaud,* 20 Fed. 621; *Johnston* v. *United States,* 87 Fed. 187; *United States* v. *Wells,* 225 Fed. 320. Later decisions require that the objection be taken to the warrant, not to the information or indictment. *Farinelli* v. *United States,* 297 Fed. 198, 199; *Schmidt* v. *United States,* 2 F. (2d) 367. Compare *Christian* v. *United States,* 8 F. (2d) 732, 733.

[12] Compare *Smith* v. *State,* 20 Ala. App. 442; *State* v. *Volk,* 144 Minn. 223.

tion to quash, if the attack on the warrant had been made before the amendment of the affidavits.[13]

There is a claim of violation of the Fifth Amendment by the imposition of double punishment. This contention rests upon the following facts. Of the nine counts in the information four charged illegal possession of liquor, four illegal sale and one maintaining a common nuisance. The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the same that they were convicted for having possessed. But possessing and selling are distinct offenses. One may obviously possess without selling; and one may sell and cause to be delivered a thing of which he has never had possession; or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offence. There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction. The precise question does not appear to have been discussed in either this or a lower federal court in connection with the National Prohibition Act; but the general principle is well established.

---

[13] See the action of the lower court described in *Poleskey* v. *United States,* 4 F. (2d) 110. As to allowing, after objection taken, the amendment of the process by which the defendant has been brought into court, see *People* v. *Hildebrand,* 71 Mich. 313; *Town of Ridgeland* v. *Gens,* 83 S. C. 562; *Keehn* v. *Stein,* 72 Wis. 196 (but see *Scheer* v. *Keown,* 29 Wis. 586). Compare *State* v. *McCray,* 74 Mo. 303. In *State* v. *Turner,* 170 N. C. 701, 702, the court said: "Even if one is wrongfully arrested on process that is defective, being in court, he would not be discharged, but the process would be amended then and there, or if the service were defective it could be served again."

Compare *Burton* v. *United States,* 202 U. S. 344, 377; *Gavieres* v. *United States,* 220 U. S. 338; *Morgan* v. *Devine,* 237 U. S. 632.

The remaining objections are unsubstantial and do not require discussion.

*Affirmed.*