**UNITED STATES, Appellee,**

v.

**Sergeant Michael A. MALONE,
278–64–8168, United States
Army, Appellant.**

**ACMR 8802962.**

U.S. Army Court of Military Review.

26 Jan. 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee: Colonel A.F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Maria C. Fernandez, JAGC, Captain Clay E. Donnigan, JAGC (on brief).

Before DeFORD, KANE, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

KANE, Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a special court-martial of violating a lawful regulation (two specifications), making a false official statement, and suffering the loss of military property of the United States in violation of Articles 92, 107, and 108 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 908 (1982). His approved sentence included a bad-conduct discharge and reduction to the grade of Private E1.

On appeal, the appellant contends that the military judge erred by failing to find Specification of Charge II (making a false official statement) and Specification 2 of Charge I (violate a lawful general regulation by wrongfully possessing and using a military identification card and a ration control plate) multiplicious with Specification 1 of Charge I (violating a lawful general regulation by wrongfully transferring duty free goods to an unauthorized person). We disagree.

On 15 September 1988, the appellant presented a false ration control plate and false identification both in the name "Charles Mitchell" to a clerk of the Camp Stanley, Korea, post exchange. With these identification documents, he also presented an "anvil" card [1] which purportedly authorized the purchase of a television and a video cassette recorder. When the clerk noted that the ration control plate had not been issued by Camp Stanley, the appellant explained that he was detailed to temporary duty at Camp Stanley and identified himself as a military police investigator. The clerk completed the transaction and the appellant departed.

Suspicious, the clerk telephoned the local military police headquarters to verify the appellant's story. He was informed that

---

1. An "anvil" card is a rational control document used to regulate the purchase of rationed, duty- free goods.

there were no military policemen on temporary duty status and was told to notify the military police if the appellant returned. On 17 September 1988, the appellant returned and the clerk notified the military police who apprehended the appellant.

At the time of his apprehension, the appellant had a brochure in his hands which described various items of stereo equipment. At the military police station, the investigator realized that the appellant was no longer in possession of the brochure. The brochure was found behind a typewriter in the office where the appellant was being held for interrogation. An identification card and ration control plate fell from the brochure. Both bore the name "Charles Mitchell" but the picture on the identification card was that of the appellant.

We agree that the facts of the case demonstrate that these offenses were part of a continuing criminal scheme, blackmarketing. Nevertheless, the specifications in issue did not arise from the same act or transaction; thus, the offenses are not multiplicious for findings purposes. *See United States v. Baker,* 14 M.J. 361, 368 (C.M.A.1983). The appellant's argument demonstrates a misunderstanding of the multiplicity which exists between specifications where one is the "means by which" the other is committed, a misunderstanding which we have noted in other cases. We will clarify this concept of multiplicity.

■ The threshold inquiry when testing for multiplicity is whether the alleged offenses "arise out of one transaction." *United States v. Baker,* 14 M.J. at 368. *See generally United States v. Baker,* 14 M.J. at 367. Only when this inquiry is answered in the affirmative does the requirement arise that we determine whether one offense is lesser included in the other. *United States v. Baker,* 14 M.J. at 368.

Generally, multiplicity issues arise in the "means-by-which" context because the facts alleged in support of a "lesser-included" charge are alleged as a necessary element of a greater charge. In essence, we are speaking of a situation where commission of the "lesser" offense was an "integral part" of the "greater." *United States v. Hollimon,* 16 M.J. 164, 166 (C.M.A.1983). One offense is an integral part of another where, for example, the offense of wrongful use of heroin is offered in proof of the self-injury element of a malingering charge, *see, e.g., United States v. Johnson,* 26 M.J. 415, 418–419 (C.M.A.1988); where the offense of communicating a threat is offered to prove the force element of a rape charge, *see, e.g., United States v. Watson,* 21 M.J. 96 (C.M.A.1985) (summary disposition); where the offense of damage to Government property is offered to prove the "breaking" element of housebreaking, *see, e.g., United States v. Straughan,* 19 M.J. 991 (A.C.M.R.1984); and where the offenses of forgery or false claim are offered to prove the "taking" element of a larceny charge. *See, e.g., United States v. Mullins,* 20 M.J. 307 (C.M.A.1985) (summary disposition) (forgery and larceny); *United States v. Smith,* 17 M.J. 320 (C.M.A. 1984) (summary disposition) (false claim and larceny).

■ When acts constituting one offense are alleged as an integral element of another, there is clearly a single act or transaction and the issue of multiplicity is joined. *See United States v. Baker,* 14 M.J. at 368. The court must then proceed to determine whether the offenses are lesser-included either because they do not contain distinct elements or because the allegations of one fairly embrace the allegations of the other. *Id.* In the case at bar, the specifications in issue are not the integral means by which the appellant committed the offense of blackmarketing; therefore, the specifications do not allege offenses arising from the same act or transaction and the issue of multiplicity is not raised.

■ The offenses alleging the use of the anvil card, Charge II and its specification (making a false official statement), and possession of a false identification card and ration control plate, Specification 2 of Charge I (violating a lawful general regulation), both involve an unlawful *acquisition* of property; the offense alleging blackmarketing activity, Specification 1 of Charge I (violate a lawful general regulation), involves the unlawful *disposition* of property. While some minimal embrace-

ment exists among the specifications in the case at bar, *see United States v. DiBello,* 17 M.J. 77 (C.M.A.1983), the specifications alleged to be multiplicious arise from a distinct transaction which does not constitute a necessary element of the offense of blackmarketing. *See United States v. McCullar,* 20 M.J. 218, 219 (C.M.A.1985); *United States v. Glover,* 16 M.J. 397 (C.M.A.1983). The criminal acquisition of the property was complete at the time the appellant took possession of the property. *See United States v. Hicks,* 24 M.J. 3, 10 (C.M.A.1987). It was not necessary for the appellant to unlawfully acquire the property in order to engage in blackmarketing activities. Thus, this preliminary transaction was a "separate step," *see Albrecht v. United States,* 273 U.S. 1, 11, 47 S.Ct. 250, 254, 71 L.Ed. 505 (1927), in the criminal enterprise and not an integral part of the consummated offense of blackmarketing. Therefore, the case at bar does not present a situation where one offense is the "means by which" another is committed in the technical sense that term is used. Rather, it presents a situation where the appellant has committed separate—albeit successive—criminal acts in furtherance of a criminal enterprise.

The findings of guilty and the sentence are affirmed.

Senior Judge DeFORD and Judge WERNER concur.