April LACY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 31A04–0810–CR–571.

Court of Appeals of Indiana.

March 24, 2009.

Transfer Denied May 21, 2009.

Bart M. Betteau New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BROWN, Judge.

April Lacy appeals her conviction for possession of a knife with an automatic opening blade as a class B misdemeanor.[1] Lacy raises one issue, which we revise and restate as whether Ind.Code § 35–47–5–2, which defines the crime of possession of a knife with an automatic opening blade, is unconstitutional. We affirm.

The relevant facts follow. On September 11, 2004, Indiana Conservation Officer James Schreck noticed three people driving all terrain vehicles without registration decals. Officer Schreck attempted to stop the people, but they fled on the vehicles. Officer Schreck patrolled the area and found an all terrain vehicle off the road in the woods. Officer Schreck eventually located Lacy lying down in the grass. Officer Schreck arrested Lacy and patted her down. Officer Schreck discovered a pocketknife and a four-inch long switchblade on Lacy.

The State charged Lacy with resisting law enforcement as a class A misdemeanor and possession of a knife with an automatic opening blade ("switchblade") as a class B misdemeanor. Lacy filed a motion to dismiss the charge of possession of a switchblade, alleging that Ind.Code § 35–47–5–2, which governs the offense, was unconstitutional. The trial court denied Lacy's motion. Lacy filed a petition for certification of interlocutory appeal, which the trial court denied. Lacy later filed a renewed motion to dismiss the charge, which the trial court denied. At the bench trial, Lacy again renewed her request to dismiss the charge, which the trial court denied. After a bench trial, the trial court found Lacy guilty as charged and sentenced her to the Department of Correction for one year on her conviction for resisting law enforcement and six months for possession of a switchblade. The trial court ordered these sentences to be served consecutively.

The sole issue is whether Ind.Code § 35–47–5–2, which defines the crime of possession of a knife with an automatic opening blade, is unconstitutional. A challenge to the validity of a statute must overcome a presumption that the statute is constitutional. *Brown v. State,* 868 N.E.2d 464, 467 (Ind.2007). The party challenging the statute has the burden of proving otherwise. *Id.*

Ind.Code § 35–47–5–2 provides:
It is a Class B misdemeanor for a person to manufacture, possess, display, offer, sell, lend, give away, or purchase any knife with a blade that:

---

1. Ind.Code § 35–47–5–2 (2004).

(1) opens automatically; or

(2) may be propelled;

by hand pressure applied to a button, device containing gas, spring, or other device in the handle of the knife.

■ Lacy argues that Ind.Code § 35–47–5–2 is unconstitutional on its face and as applied to Lacy. Specifically, Lacy argues that the statute violates her constitutional right to bear arms under Article 1, Section 32 of the Indiana Constitution, which provides that the "people shall have the right to bear arms, for defense of themselves and the State." Although Lacy argues that the statute is unconstitutional on its face, the Indiana Supreme Court has held that "[u]nless the court concludes that the statute before it is incapable of constitutional application, it should limit itself to vindicating the rights of the party before it." *Price v. State,* 622 N.E.2d 954, 958 (Ind.1993), *reh'g denied.* "Once an Indiana constitutional challenge is properly raised, a court should focus on the actual operation of the statute at issue and refrain from speculating about hypothetical applications." *Id.* Thus, we pass over Lacy's contention that Ind.Code § 35–47–5–2 is unconstitutional on its face and turn instead to whether its application in this case was unconstitutional. *See id.* at 958 (passing over Price's contention that a statute was unconstitutional on its face and addressing whether its application was unconstitutional).

■ While Article 1, Section 32 provides that the "people shall have the right to bear arms, for defense of themselves and the State," the Indiana Constitution also "affirmatively recognizes the state's police power." *City Chapel Evangelical Free Inc. v. City of South Bend ex rel. Dep't of Redevelopment,* 744 N.E.2d 443, 446 (Ind. 2001). "It declares that government is 'instituted for [the People's] peace, safety, and well-being.'" *Id.* (quoting IND. CONST.

art. 1, § 1). In this case, the governmental police power of regulating arms challenges the limitations on government when addressing the right to bear arms.

This analysis is guided by *Price,* in which the Indiana Supreme Court explained:

> [I]n Indiana the police power is limited by the existence of certain preserves of human endeavor, typically denominated as interests not "within the realm of the police power," upon which the State must tread lightly, if at all. Put another way, there is within each provision of our Bill of Rights a cluster of essential values which the legislature may qualify but not alienate. A right is impermissibly alienated when the State materially burdens one of the core values which it embodies.

*Price,* 622 N.E.2d at 960 (internal citations and footnote omitted). Lacy argues that Ind.Code § 35–47–5–2 was not a valid exercise of police power and "even if it was, the prohibition materially burdened her right to protect herself which is the core value underlying the Indiana right to bear arms provision." Appellant's Brief at 4. Thus, we must determine: (A) whether Ind.Code § 35–47–5–2 is a valid exercise of police power; and (B) whether Ind.Code § 35–47–5–2 implicates a core value, and, if so, whether the statute amounts to a material burden on that core value.

A. *Valid Exercise of Police Power*

■ "The State may exercise its police power to promote the health, safety, comfort, morals, and welfare of the public." *Price,* 622 N.E.2d at 959. "It is true that the propriety of an exercise of the police power is a judicial question." *Whittington v. State,* 669 N.E.2d 1363, 1369 (Ind.1996). Nevertheless, we must accord considerable deference to the judgment of the legislature, inasmuch as the decision as to what

constitutes a public purpose is first and foremost a legislative one. *Id.* "We [limit] ourselves to the narrow role of determining whether challenged state action has some reasonable relation to or tendency to promote the state's legitimate interests." *Id.* (footnotes omitted). Courts defer to legislative decisions about when to exercise the police power and typically require only that they be rational. *Price,* 622 N.E.2d at 959.

Other courts and legislatures have also recognized the danger of switchblades to the public and the rationality in banning them. *See Crowley Cutlery Co. v. United States,* 849 F.2d 273, 278 (7th Cir.1988) ("Switchblade knives are more dangerous than regular knives because they are more readily concealable and hence more suitable for criminal use. So it is rational to ban them, and not regular knives as well."); see *also* 15 U.S.C. §§ 1241–1245 (prohibiting the possession of switchblade knives within any territory or possession of the United States (the "Federal Anti–Switchblade Act")); S. Rep. 85–1980, 85th Cong.2d Sess. (1958), 1958 U.S.C.C.A.N. 3435, 3436–3437 (addressing the need for and background of the Federal Anti–Switchblade Act and providing that the "problem of the use of switchblade and other quick-opening knives for criminal purposes has become acute during recent years—particularly by juvenile delinquents in large urban areas," and that "police chiefs, almost without exception, indicate that these vicious weapons are on many occasions the instrument used by juveniles in the commission of robberies and assaults"); *U.S. v. Nelsen,* 859 F.2d 1318, 1320 (8th Cir.1988) (holding that Congress had a reasonable basis for passing the Federal Anti–Switchblade Act). Giving deference to the legislative decision, we conclude that Ind.Code § 35–47–5–2 is rationally calculated to advance the public good.

## B. *Material Burden on a Core Value*

 Lacy argues that the core value underlying Article 1, Section 32 is "her right to protect herself." Appellant's Brief at 4. As previously mentioned, Section 32 provides that the "people shall have the right to bear arms, for defense of themselves and the State." The "right of Indiana citizens to bear arms for their own self-defense and for the defense of the state is an interest in both liberty and property," and "[t]his interest is one of liberty to the extent that it enables law-abiding citizens to be free from the threat and danger of violent crime." *Kellogg v. City of Gary,* 562 N.E.2d 685, 694 (Ind. 1990). Based upon *Kellogg,* we conclude that the core value embodied by Section 32 is the right for law-abiding citizens to bear arms for self defense. The issue here is whether Ind.Code § 35–47–5–2 implicates this core value. Even if we assume that the core value is implicated here, we conclude that the statute does not materially burden it.

 ██ " 'Material burden' analysis involves no . . . weighing nor is it influenced by the social utility of the state action at issue." *Price,* 622 N.E.2d at 960 n. 7. "Instead, we look only at the magnitude of the impairment. If the right, as impaired, would no longer serve the purpose for which it was designed, it has been materially impaired." *Id.* "[A] state regulation creates a material burden if it imposes a substantial obstacle on a core constitutional value serving the purpose for which it was designed; and we hold that in most circumstances, less than a substantial obstacle does not." *Clinic for Women, Inc. v. Brizzi,* 837 N.E.2d 973, 984 (Ind.2005).

Indiana courts have already held that the right to bear arms is not absolute. *See Kellogg,* 562 N.E.2d at 694; *Dozier v. State,* 709 N.E.2d 27, 31 (Ind.Ct.App.1999).

The Indiana Supreme Court has determined that the "Legislature has the power, in the interest of public safety and welfare, to provide reasonable regulations for the use of firearms which may be readily concealed." *Matthews v. State,* 237 Ind. 677, 686, 148 N.E.2d 334, 338 (1958) (rejecting an Article 1, Section 32 challenge to handgun legislation).

Lacy argues that Indiana courts have "only condoned 'reasonable regulation' of self defense type weapons—never a complete ban." Appellant's Brief at 15. Indiana has never addressed the constitutionality of a statute that prohibits a specific arm. However, the Indiana Supreme Court has held that Section 32 "does not say that the people shall have a right to bear pistols, or any other specific kind or type of arms." *Matthews,* 237 Ind. at 686, 148 N.E.2d at 338. Ind.Code § 35-47-5-2 does not completely ban a class of weapons, i.e. knives. Rather, the statute only bans knives that open automatically or "may be propelled . . . by hand pressure applied to a button, device containing gas, spring, or other device in the handle of the knife." I.C. 35-47-5-2.

Lacy relies heavily upon *State v. Delgado,* 298 Or. 395, 692 P.2d 610 (1984), in which the Supreme Court of Oregon addressed whether an Oregon statute that prohibited the possession and carrying of a switchblade violated the defendant's right to bear arms under Article I, section 27, of the Oregon Constitution.[2] Initially, the court disagreed with the State's argument that the switchblade is an offensive weapon used primarily by criminals. 298 Or. at 399–400, 692 P.2d at 612. The court phrased the issue as "whether a kind of

weapon, as modified by its modern design and function, is of the sort commonly used by individuals for personal defense during either the revolutionary and post-revolutionary era, or in 1859 when Oregon's constitution was adopted." *Id.* at 400–401, 692 P.2d at 612. The court held that "it must be determined whether the drafters would have intended the word 'arms' to include the switch-blade knife as a weapon commonly used by individuals for self defense." *Id.* at 401, 692 P.2d at 612. The court held that to answer this question, it "must journey briefly into the history of knives." *Id.* The court examined the history of the fighting knife since the Roman civilization. *Id.* at 401–403, 692 P.2d at 613–614. The court noted that "[o]ne of the most common of the specific named knives is the jackknife, a word of uncertain origin, which was a large single-bladed folding knife, ranging in size from four to seven inches when closed," and that the jackknife was common in the 1700s. *Id.* at 402, 692 P.2d at 613. The court held, "We are unconvinced by the state's argument that the switch-blade is so 'substantially different from its historical antecedent' (the jackknife) that it could not have been within the contemplation of the constitutional drafters. They must have been aware that technological changes were occurring in weaponry as in tools generally." *Id.* at 403, 692 P.2d at 614. The court concluded that the Oregon statute "absolutely proscribes the mere possession or carrying of such arms," and "[t]his the [Oregon] constitution does not permit." *Id.* at 404, 692 P.2d at 614.

We do not find *Delgado* persuasive. First, we note that the *Delgado* court did not hold that the switchblade was common-

---

**2.** Article I, section 27, of the Oregon Constitution provided that "[t]he people shall have the right to bear arms for the defence of themselves, and the State. . . ." 298 Or. at 397, 692 P.2d at 610. The court noted that Article I,

section 27 of the Oregon Constitution "was taken verbatim from sections 32 and 33 of the Indiana Constitution of 1851." *Id.* at 401 n. 5, 692 P.2d at 613 n. 5.

ly used by law-abiding citizens during the time when Oregon's constitution was adopted. Second, unlike the court in *Delgado*, we conclude that switchblades are primarily used by criminals and are not substantially similar to a regular knife or jackknife. *See Crowley Cutlery Co.*, 849 F.2d at 278 ("Switchblade knives are more dangerous than regular knives because they are more readily concealable and hence more suitable for criminal use. So it is rational to ban them, and not regular knives as well."); *see also* 15 U.S.C. §§ 1241–1245 (prohibiting the possession of switchblade knives within any territory or possession of the United States (the "Federal Anti–Switchblade Act")); S. Rep. 85–1980, 85th Cong.2d Sess. (1958), 1958 U.S.C.C.A.N. 3435, 3436–3437 (addressing the need for and background of the Federal Anti–Switchblade Act and providing that the "problem of the use of switchblade and other quick-opening knives for criminal purposes has become acute during recent years—particularly by juvenile delinquents in large urban areas," and that "police chiefs, almost without exception, indicate that these vicious weapons are on many occasions the instrument used by juveniles in the commission of robberies and assaults").

In summary, we cannot say that switchblades are typically possessed by law-abiding citizens for self defense purposes. We also conclude that Ind.Code § 35–47–5–2 is limited because it does not prohibit the possession of all knives but only knives that open automatically or "may be propelled ... by hand pressure applied to a button, device containing gas, spring, or other device in the handle of the knife." I.C. 35–47–5–2. Based upon these conclusions, we hold that Ind.Code § 35–47–5–2 does not place a material burden upon the core value of Lacy's right to defend herself. Thus, we conclude that Ind.Code § 35–47–5–2 is not unconstitutional as applied to Lacy.[3]

---

**3.** Other courts have reached similar results regarding sawed-off shotguns, which we find analogous. *See State v. LaChapelle*, 234 Neb. 458, 462–463, 451 N.W.2d 689, 691 (1990) (holding that "[i]n view of the nature of a machine gun, short rifle, and short shotgun related to criminal purposes which may be achieved through such firearms, we find that [the Nebraska statute that prohibited the possession of any machine gun, short rifle, or short shotgun] is not vitiated by the Right to Bear Arms amendment of 1988, is a valid exercise of the State's police power in reasonable regulation of certain firearms, and does not contravene Neb. Const. art. I, § 1," which provided, in part, that "[a]ll persons ... have certain inherent and inalienable rights; among these are ... the right to keep and bear arms for security or defense of self, family, home, and others, and for lawful common defense, hunting, recreational use, and all other lawful purposes, and such rights shall not be denied or infringed by the state or any subdivision thereof"); *State v. Fennell*, 95 N.C.App. 140, 142–144, 382 S.E.2d 231, 232–233 (1989) (rejecting an argument that a statute banning the possession of short barreled shotguns violated the right to bear arms provision of the North Carolina constitution where the statute did not completely ban a class of weapons protected by the constitution and because the State can regulate more than just the time, place and manner in which a firearm is borne); *Carson v. State*, 241 Ga. 622, 628, 247 S.E.2d 68, 73 (1978) (a statute "was not arbitrary or unreasonable to prohibit the keeping and carrying of sawed-off shotguns, which are of a size such as can easily be concealed and which are adapted to and commonly used for criminal purposes"). *See also District of Columbia v. Heller*, —— U.S. ——, ——–——, 128 S.Ct. 2783, 2815–2816, 171 L.Ed.2d 637 (2008) (discussing *U.S. v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), and holding, "We ... read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns"); *U.S. v. Fincher*, 538 F.3d 868, 874 (8th Cir.2008) (holding that, under *Heller*, the defendant's possession of machine guns was not protected by the Second Amendment because machine guns "are not in common use by law-abiding

For the foregoing reasons, we affirm Lacy's conviction for possession of a knife with an automatic opening blade as a class B misdemeanor.

Affirmed.

ROBB, J. and CRONE, J. concur.

citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use"), *reh'g and reh'g en banc denied, cert. denied,* —— U.S. ——, 129 S.Ct. 1369, 173 L.Ed.2d 591 (2009).