

IN THE

# Court of Appeals of Indiana

Arthur Moore,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Oct 01 2024, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

October 1, 2024

Court of Appeals Case No.
23A-CR-2189

Appeal from the Marion Superior Court

The Honorable James Osborn, Judge

Trial Court Cause No.
49D21-2212-CM-34124

**Opinion by Judge Kenworthy**
Judge Felix concurs.

Judge Tavitas concurs with separate opinion.

**Kenworthy, Judge.**

## Case Summary

Arthur Moore appeals his conviction for Class A misdemeanor unlawful carrying of a handgun.[1] Moore contends Indiana Code Section 35-47-2-1.5(b)(6) ("Subsection (b)(6)")—which prohibits a "person under indictment" from knowingly or intentionally carrying a handgun—violates his right to bear arms under the Second Amendment to the United States Constitution and Article 1, Section 32 of the Indiana Constitution. Concluding Subsection (b)(6)—as applied to Moore—violates neither provision, we affirm.

## Facts and Procedural History[2]

In December 2022, Moore wrecked his automobile in a wooded area near an apartment complex. Only Moore was in the vehicle. As Moore exited the wreckage, a firefighter on scene noticed a firearm in the car. The firefighter told

---

[1] Ind. Code § 35-47-2-1.5(b), (e) (2022). Effective July 1, 2022, the General Assembly amended Indiana's statute requiring a license to carry a handgun. *See* I.C. § 35-47-2-1 (2022). This effectively eliminated the criminal offense of carrying a handgun without a license. *See Lawrence v. State*, 214 N.E.3d 361, 362 (Ind. Ct. App. 2023). At the same time, the General Assembly added Indiana Code Section 35-47-2-1.5, outlining the new crime of "unlawful carrying of a handgun." This statute makes it either a Class A misdemeanor or a Level 5 felony for certain categories of people to knowingly or intentionally carry a handgun.

[2] We heard oral argument on June 11, 2024, at the JCC Indianapolis. We thank counsel for their able presentations and all those in attendance for their attentiveness, hospitality, and thoughtful questions.

police, who later located a handgun lying on the driver's seat and a clip containing live ammunition on the vehicle's dashboard. At the time, Moore had pending charges for Level 6 felony sexual battery, Level 6 felony dealing in marijuana, and Level 6 felony maintaining a common nuisance.[3] A trial court had found probable cause to support all three felony charges.

[3] Following Moore's crash, the State charged him—as a person under indictment—with Class A misdemeanor unlawful carrying of a handgun.[4] Moore moved to dismiss the information, alleging Subsection (b)(6) violates both the United States and Indiana Constitutions. After the trial court denied his motion, Moore proceeded to bench trial. The trial court found Moore guilty as charged and sentenced him to one year with credit for time served and the remainder suspended to probation.

## Standard of Review

[4] Moore lodges an as-applied challenge to Subsection (b)(6)'s constitutional validity.[5] To prevail, Moore must "show the statute is unconstitutional on the

---

[3] I.C. § 35-42-4-8(a)(1)(A) (2014) (sexual battery); I.C. § 35-48-4-10(a)(2) (2018) (dealing in marijuana); I.C. § 35-45-1-5(c) (2018) (maintaining a common nuisance).

[4] In this context, "indictment" means "any formal accusation of a crime made by a prosecuting attorney in any court for a crime punishable by a term of imprisonment exceeding one (1) year." I.C. § 35-47-2-1.5(a)(7). "A crime or offense 'punishable by a term of imprisonment exceeding one (1) year,'" however, "does not include a federal or state crime or offense pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." I.C. § 35-47-2-1.5(a)(8).

[5] In his briefing, Moore repeatedly noted he is challenging Subsection (b)(6) as applied to his case. *See, e.g., Appellant's Reply Br.* at 8 ("Moore has not raised a facial challenge to the statute."). And when fielding questions on the nature of his constitutional challenge at oral argument, Moore consistently asserted he is raising an as-applied challenge, not a facial one. *See, e.g., Oral Argument* at 14:53–15:15,

facts of [his] particular case." *State v. S.T.*, 82 N.E.3d 257, 259 (Ind. 2017) (quoting *State v. Zerbe*, 50 N.E.3d 368, 369 (Ind. 2016)). The constitutionality of an Indiana statute is a pure question of law we review *de novo*. *See Morales v. Rust*, 228 N.E.3d 1025, 1033 (Ind. 2024).

## 1. Subsection (b)(6)—as applied to Moore—does not violate the Second Amendment to the United States Constitution.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.[6] The right to keep and bear arms is among the "fundamental rights necessary to our system of ordered liberty." *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024) (quoting *McDonald*, 561 U.S. at 778). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *see also Rahimi*, 144 S. Ct. at 1897 (explaining the right does not "sweep indiscriminately"). "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right

---

https://mycourts.in.gov/arguments/default.aspx?&id=2890&view=detail&yr=&when=&page=1&court=&search=&direction=%20ASC&future=False&sort=&judge=&county=&admin=False&pageSize=20 [https://perma.cc/XZZ9-Z3S7].

[6] The Second Amendment is "fully applicable" to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). The Second Amendment therefore has the same scope against the States as it does against the Federal Government. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 37 (2022).

was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

To "help delineate the contours" of the Second Amendment right, the Supreme Court in *Bruen* directed courts to examine this Nation's "historical tradition of firearm regulation." *Rahimi*, 144 S. Ct. at 1897 (quoting *Bruen*, 597 U.S. at 17). In doing so, the *Bruen* Court refashioned the test for analyzing Second Amendment challenges to firearm restrictions:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Bruen*, 597 U.S. at 24.[7] Under this test, the historical inquiry "will often involve reasoning by analogy." *Id.* at 28. "[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 28–29 (quoting Cass R. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)).

"Why and how the regulation burdens the right are central to this inquiry." *Rahimi*, 144 S. Ct. at 1898. So, "if laws at the founding regulated firearm use to

---

[7] Following *Heller* and *McDonald*, the Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Id.* at 17. In *Bruen*, the Supreme Court rejected this framework as being "one step too many." *Id.* at 19.

address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* But even a law regulating arms-bearing for a permissible reason "may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.*

As the Supreme Court recently reminded us in *Rahimi*, courts should not read *Bruen* too narrowly. A challenged regulation that does not precisely match its historical precursors may still be "analogous enough to pass constitutional muster." *Bruen*, 597 U.S. at 30 (explaining "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check"). "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 30) (emphasis omitted); *see also id.* at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under *Bruen* demands a wider lens: Historical regulations reveal a principle, not a mold.").

## A. The Second Amendment's plain text covers Moore's conduct.

*Bruen's* first step requires us to assess whether the Second Amendment's plain text covers Moore's conduct. This analysis asks three questions: (1) Is Moore someone whom the Second Amendment protects? (2) Is the weapon Moore carried in common use today? (3) Does the plain text of the Second Amendment protect Moore's specific conduct? *See Bruen*, 597 U.S. at 31–32. Moore claims this "threshold inquiry is easily satisfied here," *Appellant's Br.* at

9, and the State does not contend otherwise, *see Appellee's Br.* at 18.[8]  With step one satisfied, we now embark on the historical analysis mandated by *Bruen's* second step.

## B. Subsection (b)(6) is consistent with the principles underpinning this Nation's historical tradition of firearm regulation.

Next, we must consider whether Subsection (b)(6) is "consistent with the principles that underpin" this Nation's historical tradition of firearm regulation. *Rahimi*, 144 S. Ct. at 1898.  In doing so, "we are not obligated to sift the historical materials for evidence to sustain [the State's] statute."  *Bruen*, 597 U.S. at 60.  That is the State's burden.  *Id.*  Instead, we decide cases based on the historical record compiled by the parties.  Here, the State offers historical laws disarming criminal defendants facing serious pending charges as potential analogues to Subsection (b)(6).[9]  In our view, these historical analogues are relevantly similar such that they show Subsection (b)(6) is consistent with the principles underpinning this Nation's historical tradition of firearm regulation.

---

[8] More specifically, the State agrees "carrying handguns in public for self-defense is conduct that is covered by the plain text of the Second Amendment" and "a citizen who is 'under indictment' falls within 'the people' to whom the Second Amendment right presumptively applies."  *Id.*  There is ongoing discussion among jurists and scholars concerning whether the Second Amendment protects only the rights of "law-abiding" citizens.  *See, e.g.*, Jacob D. Charles, *Defeasible Second Amendment Rights: Conceptualizing Gun Laws That Dispossess Prohibited Persons*, 83 Law & Contemp. Probs. 53 (2020) (summarizing debate about whether certain groups subject to disarmament fall outside the Second Amendment entirely or instead have defeasible gun rights).  But based on the State's concession, we need not stake our place in this debate.

[9] In addition to what it labels "pretrial detention" laws, the State also points to the surety laws and laws providing for the disarmament of "dangerous" people to sustain Subsection (b)(6).  Based on our conclusion, however, we need not address whether these categories of historical laws are sufficiently analogous to Subsection (b)(6).

Since the Founding, the government has been empowered to detain criminal defendants while they await trial. *See* U.S. Const. amend. V (providing that a person may be "held to answer for a capital, or otherwise infamous crime . . . on a presentment or indictment of a Grand Jury"); *see also* Act of Sep. 24, 1789, ch. XX § 33, 1 Stat. 73, 91 ("[F]or any crime or offence against the United States, the offender may . . . be arrested, and imprisoned."). In the founding era, pretrial detention involved complete disarmament. *See, e.g.*, *State v. Buzzard*, 4 Ark. 18, 21 (1842) (opinion of Ringo, C.J.) (recognizing "[p]ersons accused of a crime, upon their arrest, have constantly been divested of their arms, without the legality of the act having ever been questioned"); Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204, 266 (1983) ("[The] law punished felons with automatic forfeiture of all goods, usually accompanied by death. We may presume that persons confined in gaols awaiting trial on criminal charges were also debarred from the possession of arms.").

This is not to say all defendants facing criminal charges were subject to pretrial detention. They were not. Bail, or pretrial release, has historical roots in the founding era. *See* Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L. Rev. 1816, 1832–45 (2024) (discussing the "common law" and "dissenter" models of bail in the founding era). But pretrial release in the founding era was much rarer than it is today because defendants facing capital charges were not allowed to be released pending trial. *See id.* at 1892 (describing how even under the "dissenter model," which became the

"dominant framework nationwide" and more strictly protected pretrial liberty, those facing capital charges fell outside the right to bail); *see also* Act of Sep. 24, 1789, ch. XX, § 33, 1 Stat. 73, 91 (an act of the First Congress making bail available in all criminal cases "except where the punishment may be death"); 4 William Blackstone, *Commentaries on the Laws of England* 294 (1770) ("[I]n felonies, and other offences of a capital nature, no bail can be a security equivalent to the actual custody of the person."). Several early state constitutions carved out a similar exception to bail for those accused of "capital" crimes. *See United States v. Perez-Garcia*, 96 F.4th 1166, 1183 (9th Cir. 2024) (compiling early state constitutions). And early state court decisions show this practice continued after the Second Amendment was ratified. *See, e.g.*, *State v. Hill*, 1 Tread. 242, 246 (S.C. Const. App. 1812) (opinion of Smith, J.) ("The general rule is, not to admit to bail after bill found, in capital cases.").

[13] Notably, "capital" crimes in the founding era encompassed a broad set of offenses. *See Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019) (explaining nonviolent crimes like forgery and horse theft were capital offenses at the time of the Second Amendment's ratification), *cert. denied*; *see also Harmelin v. Michigan*, 501 U.S. 957, 980–81 (opinion of Scalia, J.) (describing an act of the First Congress which "punished forgery of United States securities [and] 'run[ning] away with [a] ship or vessel, or any goods or merchandise to the value of fifty dollars'" with death) (quoting An Act for the Punishment of Certain Crimes Against the United States, Chap. IX, § 8, 1 Stat. 112, 114 (1790)). Indeed, most serious crimes and felonies were eligible for capital

charges because "death was 'the standard penalty for all serious crimes' at the time of the founding." *Bucklew v. Precythe*, 587 U.S. 119, 129 (2019) (quoting Stuart Banner, *The Death Penalty: An American History* 23 (2002)); *see also Baez v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring) (highlighting the "ubiquity of the death penalty in the founding era"); 4 Blackstone, *Commentaries* at 98 ("The idea of felony is indeed so generally connected with that of capital punishment, that we find it hard to separate them[.]"). Although the penalties for many felonies became less severe in the decades after the Founding, *see* Will Tress, *Unintended Collateral Consequences: Defining Felony in the Early American Republic*, 57 Clev. St. L. Rev. 461, 468 (2009) (discussing penal reform in decades following independence from England), this history reveals our Nation's historical tradition of completely disarming criminal defendants facing serious or felony charges pending trial, s*ee Perez-Garcia*, 96 F.4th at 1182–84 (surveying the historical record supporting this tradition).[10]

[14] Subsection (b)(6)'s restriction on Moore's right to bear arms is "relevantly similar" to the historical tradition set forth above as to "evince[] a comparable tradition of regulation." *Bruen*, 597 U.S. at 29, 27. Both Subsection (b)(6) and its historical precursors burden the Second Amendment right in like manner— the "how." As explained, the historical tradition allowed for complete but temporary disarmament of a specific and narrow subset of the general

---

[10] This founding era practice can be broken down into three parts: "(1) most serious crimes were eligible for capital charges; (2) the government had the power to detain, and usually did detain, defendants indicted on capital charges; and (3) once detained, criminal defendants were completely disarmed." *Id.* at 1182.

population. That is, the historical precursors applied only to criminal defendants awaiting trial for alleged, serious crimes. Similarly, Subsection (b)(6) targets only those "under indictment" for an offense punishable by a year or more imprisonment. *See* I.C. § 35-47-2-1.5(b)(6), (e); I.C. § 35-47-2-1.5(a)(7). Moreover, Subsection (b)(6)'s restriction is temporary—it applies only so long as Moore is under indictment. And comparatively, Subsection (b)(6) is less restrictive of Moore's right to bear arms than the historical record surveyed above. Instead of completely disarming Moore, Subsection (b)(6) strips only his right to lawfully carry a handgun.

[15] Subsection (b)(6) and the historical laws surveyed above also burden the Second Amendment right for similar reasons—the "why." Pretrial detention in the late 18th century ensured "the safety of the people should be preserved against the lawless depredations of atrocious offenders." *Perez-Garcia*, 96 F.4th at 1184 (quoting A. Highmore, *A Digest of the Doctrine of Bail: In Civil and Criminal Cases*, vii (1783)). In more modern parlance, one historical justification for pretrial detention and disarmament was to protect the public from future criminal acts by the accused. Subsection (b)(6) seeks to achieve the same protective function by temporarily disarming individuals accused of serious wrongdoing to reduce

the risk he or she will harm the public, most prominently by misusing a handgun.[11] In other words, the justifications match.

[16] Refocusing on Moore's alleged misconduct, we have no trouble classifying his pending felony charges as serious. Regardless of level, felonies were and remain the most serious category of crime deemed by our legislature. *See Medina*, 913 F.3d at 160 ("When the legislature designates a crime as a felony, it signals to the world the highest degree of societal condemnation for the act, a condemnation that a misdemeanor does not convey."). This seriousness is embodied in the slew of repercussions Moore could face if convicted of any of his underlying felony charges. *See, e.g.,* I.C. § 35-50-2-7(b) (2019) (providing a sentencing range of six months to two and one-half years imprisonment for a person who commits a Level 6 felony); 18 U.S.C. §§ 922(g)(1), 924(a)(8) (2022) (federal law prohibiting convicted felons from possessing firearms); I.C. § 35-47-2-1.5(b)(1) (Indiana law prohibiting convicted felons from knowingly or intentionally carrying a handgun); *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974) (upholding state felon disenfranchisement). Certainly, Moore is presumed innocent of these other charges unless and until the State can prove the allegations beyond a reasonable doubt. *McCowan v. State*, 27 N.E.3d 760, 761–62 (Ind. 2015). Still, Moore's charges suggest potential serious wrongdoing.

---

[11] In recognizing Subsection (b)(6)'s purpose, we pass no judgment on the legislature's policy choices. *See KS&E Sports v. Runnels*, 72 N.E.3d 892, 907 (Ind. 2017) (recognizing courts "neither applaud the wisdom of such choices nor condemn their folly").

To be sure, Subsection (b)(6) is not identical to historical laws disarming criminal defendants facing serious or felony charges pending trial. But to require such would be misconstruing *Bruen's* command. *See Bruen*, 597 U.S. at 29–30 (requiring the regulations be "relevantly similar," not "historical twin[s]") (emphasis omitted). Subsection (b)(6)'s prohibition fits within this Nation's tradition of disarming criminal defendants facing serious pending charges. It therefore does not violate Moore's Second Amendment right. *See Rahimi*, 144 S. Ct. at 1901 (upholding a federal statute that "fits neatly" within this Nation's historical tradition even though it was "by no means identical" to founding era regimes).

## 2. Subsection (b)(6)—as applied to Moore—does not violate Article 1, Section 32 of the Indiana Constitution.

Moore also claims Subsection (b)(6) violates Article 1, Section 32 of Indiana's Constitution because it materially burdens his right to bear arms. When faced with a question under Indiana's Constitution, we examine "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our Constitution, and case law interpreting the specific provisions." *Holcomb v. Bray*, 187 N.E.3d 1268, 1277 (Ind. 2022) (quoting *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 741 (Ind. 2015)). We treat the language in each provision with "deference, as though every word had been hammered into place." *Id.* (quoting *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013)). Ultimately, the challenger bears a high burden because all laws come to us "cloaked with 'the presumption of constitutionality until

clearly overcome by a contrary showing.'" *Rust*, 228 N.E.3d at 1033 (quoting *Horner v. Curry*, 125 N.E.3d 584, 588 (Ind. 2019)).

[19] Section 32 guarantees: "The people shall have a right to bear arms, for the defense of themselves and the State." Ind. Const. art. 1, § 32. The "right for law-abiding citizens to bear arms for self-defense" lies at the core of Section 32, *Lacy v. State*, 903 N.E.2d 486, 490 (Ind. Ct. App. 2009), *trans. denied*, and encompasses an interest in both liberty and property, s*ee Kellogg v. City of Gary*, 562 N.E.2d 685, 694 (Ind. 1990) (noting the interest "is one of liberty to the extent that it enables law-abiding citizens to be free from the threat and danger of violent crime"). But like the Second Amendment right, the right to bear arms under Section 32 is not absolute. *See id.* Rather, under the State's affirmatively recognized police power, the State may, and does, regulate the exercise of the Section 32 right. *See, e.g., Matthews v. State*, 148 N.E.2d 334, 338 (Ind. 1958) ("The Legislature has the power, in the interest of public safety and welfare, to provide reasonable regulations for the use of firearms which may be readily concealed, such as pistols."); Ind. Const. art. 1, § 1 (declaring government is "instituted for [the People's] peace, safety, and well-being").

[20] We analyze a Section 32 challenge to a firearm regulation under a two-part framework.[12] First, we apply rational basis review to determine whether the

---

[12] When asked to weigh in on a firearm restriction's constitutionality, Indiana appellate courts have often upheld the restriction as constitutionally sound. *See, e.g., State v. Stephens*, 174 N.E.2d 51, 51 (Ind. 1961) (upholding law criminalizing carrying a pistol in a vehicle without a license); *Matthews*, 148 N.E.2d at 338 (rejecting a Section 32 challenge to handgun legislation); *McIntire v. State*, 83 N.E. 1005, 1005–06 (Ind. 1908)

firearm restriction is a valid exercise of the State's "police power to promote health, safety, comfort, morals, and welfare of the public." *Wilder*, 91 N.E.3d at 1027 (quoting *Redington*, 992 N.E.2d at 832). If the restriction passes rational basis review, we must then determine whether it "materially burdens one of the core values" embodied in Indiana's Bill of Rights. *Price v. State*, 622 N.E.2d 954, 960 (Ind. 1993). On appeal, Moore does not dispute Subsection (b)(6) passes rational basis review. *See Appellant's Br.* at 16 n.4 (declining to argue Subsection (b)(6) does not have a reasonable relation to or a tendency to promote the state's legitimate interest). We therefore proceed to step two of the analysis.

### Subsection (b)(6) does not materially burden Moore's Article 1, Section 32 right to bear arms.

[21]   Our material burden analysis recognizes that "in Indiana the police power is limited by the existence of certain preserves of human endeavor, typically denominated as interests not within the realm of the police power, upon which the State must tread lightly, if at all." *Price*, 622 N.E.2d at 960 (internal

---

(upholding legislation prohibiting the carrying of concealed weapons); *State v. Mitchell*, 3 Blackf. 229, 229 (Ind. 1833) (upholding statute prohibiting all persons, except travelers, from wearing or carrying concealed weapons); *Wilder v. State*, 91 N.E.3d 1016, 1028 (Ind. Ct. App. 2018) (upholding a probation condition prohibiting the defendant from possessing firearms); *Redington v. State*, 992 N.E.2d 823, 835 (Ind. Ct. App. 2013) (upholding an act allowing the State to seize, pursuant to a warrant, firearms of a person who the State proved by clear and convincing evidence met the statutory definition of "dangerous," even when the defendant had never been convicted of a crime and claimed not to have a mental illness), *trans. denied*; *Conrad v. State*, 747 N.E.2d 575, 584–85 (Ind. Ct. App. 2001) (upholding constitutionality of Indiana's unlawful possession of a firearm by a serious violent felon statute), *trans. denied*; *see also Lacy*, 903 N.E.2d at 492 (upholding restriction on a particular type of weapon, switchblades). Of course, not all these cases analyzed the restriction under the modern-day, material burden framework.

quotation and citation omitted). Said differently, each provision of our Bill of Rights contains "a cluster of essential values which the legislature may qualify but not alienate." *Id.*

"A right is impermissibly alienated when the State materially burdens one of the core values which it embodies." *State v. Katz*, 179 N.E.3d 431, 448 (Ind. 2022). Rather than weighing the impingement of a right against the public health, welfare, and safety served or being influenced by the social utility of the state action at issue, a material burden analysis looks "only at the magnitude of the impairment." *Price*, 622 N.E.2d at 960 n.7. "If the right, as impaired, would no longer serve the purpose for which it was designed, it has been materially impaired." *Id.*; *Clinic for Women, Inc. v. Brizzi*, 837 N.E.2d 973, 984 (Ind. 2005) (holding "a state regulation creates a material burden if it imposes a substantial obstacle on a core constitutional value serving the purpose for which it was designed"). Often, however, "less than a substantial obstacle does not" amount to a material burden. *Brizzi*, 837 N.E.2d at 984; *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 805 (Ind. 2011) (explaining without a "substantial obstacle," there is no material burden on the right).

But, as our Supreme Court has explained, determining the magnitude of the impairment is only one part of the material-burden inquiry. State action "does not impose a material burden . . . if *either* the 'magnitude of the impairment' is slight" or the exercise of the right "threatens to inflict 'particularized harm' analogous to tortious injury on readily identifiable private interests." *Econ. Freedom Fund*, 959 N.E.2d at 805 (quoting *Whittington v. State*, 669 N.E.2d 1363,

1370 (Ind. 1996)) (emphasis added); *see also Redington*, 992 N.E.2d at 834–35 (applying this two-part material burden framework to a Section 32 claim).  If there is a threat of "particularized harm," then the state action does not impose a material burden on the right to bear arms for self-defense.  *See Redington*, 922 N.E.2d at 834–35.

[24]  Even if we were to deem the magnitude of the impairment as substantial, Subsection (b)(6) still does not materially burden Moore's right to bear arms for self-defense under Section 32.  Gun violence, caused by handgun misuse more specifically, threatens to inflict particularized harm on others.  *See id.* at 834 n.4 (noting only a "*threat*" analogous to tortious injury on readily identifiable interests is required under this part of the analysis).  As common sense suggests, individuals have an identifiable private interest in not being harmed by gun violence committed by another who—there is probable cause to believe— engaged in violent or anti-social behavior.  The trial court found probable cause to support charges against Moore for three Level 6 felonies, including an allegation that Moore compelled a victim to submit to sexual touching by force.[13]  If Moore were permitted to carry a handgun while under indictment, he

---

[13] Strictly speaking, Level 6 felony sexual battery is not a "crime of violence," as defined by our legislature. *See* I.C. § 35-50-1-2(a) (2020) (listing twenty-one crimes of violence, but not including sexual battery); I.C. § 35-31.5-2-79 (2012).  Battery and domestic battery are included as "crimes of violence," but only as Level 5 felonies or higher.  *See* I.C. §§ 35-50-1-2(a)(6) & (7).  But Moore's charge of Level 6 felony sexual battery *does* involve an allegation of force or threat of force.  *See* I.C. § 35-42-4-8(a)(1)(A); *Ex. Vol. 1* at 37.  In this sense, it is a "forcible felony."  *See* I.C. § 35-31.5-2-138 (2012) (defining a "forcible felony").  Regardless of classification, the charges create a link to alleged violent or forceful conduct that is more than tenuous.  *See Hines v. State*, 30 N.E.3d 1216, 1226 (Ind. 2015) (considering sexual battery a "violent crime[]," although not classified as such by our legislature).

would pose a further threat of violence. Because Moore's exercise of his Section 32 right to bear arms for self-defense while under indictment for multiple felonies threatens to inflict particularized harm analogous to tortious injury on readily identifiable private interests, his challenge to Subsection (b)(6) under Indiana's Constitution fails.

## Conclusion

The State has satisfied its burden to show Subsection (b)(6) is consistent with the principles underpinning this Nation's historical tradition of firearm regulation. And Moore has not shown Subsection (b)(6) imposes a material burden on his right to bear arms under Indiana's Constitution. Accordingly, Subsection (b)(6)—as applied to Moore—violates neither the Second Amendment nor Article 1, Section 32.

Affirmed.

Felix, J., concurs.

Tavitas, J., concurs with separate opinion.

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

**Tavitas, Judge, concurring.**

Moore claims that Indiana Code Section 35-47-2-1.5(b)(6)'s categorical prohibition on carrying a handgun by a person "under indictment" for any felony, including low-level, non-violent felonies, as applied to Moore, violates his constitutional right to bear arms under both the Second Amendment to the United States Constitution and Article 1, Section 32 of the Indiana Constitution. I concur in the majority's holding that Indiana Code Section 35-47-2-1.5(b)(6), as applied to Moore, does not violate Moore's right to bear arms under either the Second Amendment or Article 1, Section 32. I write separately to emphasize that: (1) under slightly different circumstances, Indiana Code Section 35-47-2-1.5(b)(6) could run afoul of the constitutional right to bear arms; and (2) Moore's right to bear arms has not been materially burdened.

## A. The Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary for the security of a free state, the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II (capitalization modernized). In *District of Columbia v. Heller*, 554 U.S. 570, 628, 128 S. Ct. 2783, 2817 (2008), the United States Supreme Court held that the Second Amendment protects the right of individuals to keep and bear arms for the purpose of self-defense. Two years later, the Court held that the Second Amendment applies to the states via the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750, 130 S Ct. 3020, 3025 (2010). And in 2022, the Court held that "the Second and Fourteenth Amendments protect an

individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10, 142 S. Ct. 2111, 2122 (2022). The Court has emphasized, however, that its holdings do "not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill[.]'" *McDonald*, 561 U.S. at 786, 130 S. Ct. at 3047 (quoting *Heller*, 554 U.S. at 626, 128 S Ct. at 2816-17). When a firearm regulation is challenged as violating the Second Amendment, "the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" *United States v. Rahimi*, 602 U.S. ___, ___, 144 S. Ct. 1889, 1891 (2024) (quoting *Bruen*, 597 U.S. at 24, 142 S. Ct. 2111, 2130).

## B. Article 1, Section 32

[29] Article 1, Section 32 of the Indiana Constitution provides even more explicit protections for the right to keep and bear arms. This provision states: "the people have the right to bear arms, for the defense of themselves and the State." Ind. Const. art. 1, § 32. As early as 1980—decades before *Heller* and *McDonald*—Indiana courts recognized that "our constitution provides our citizenry the right to bear arms for their self-defense." *Schubert v. DeBard*, 398 N.E.2d 1339, 1341 (Ind. Ct. App. 1980) (quoted in *Kellog v. City of Gary*, 562 N.E.2d 685, 964 (Ind. 1990)). Of course, this right is not absolute. *Kellog*, 562 N.E.2d at 694. When addressing claims that a restriction on this right is contrary to Article 1, Section 32, we first apply rational basis review to determine if the restriction "is a valid exercise of 'police power to promote

health, safety, comfort, morals, and welfare of the public.'" *Wilder v. State*, 91 N.E.3d 1016, 1027 (Ind. Ct. App. 2018) (quoting *Redington v. State*, 992 N.E.2d 823, 832 (Ind. Ct. App. 2013)). If the restriction is a valid exercise of the police power, we then determine whether the restriction "'materially burdens' a 'core value.'" *Id.* (quoting *Redington*, 992 N.E.2d at 833).

## C. Indiana's Handgun Statutes

[30] Prior to 2022, a person who wished to carry a handgun in Indiana was generally required to obtain a handgun license. *See* Ind. Code § 35-47-2-3 (setting forth procedure for obtaining a license to carry a handgun); Ind. Code § 35-47-2-1 (defining the crime of carrying a handgun without a license). Certain persons, however, were statutorily prohibited from obtaining a handgun license, including those who: (1) had been convicted of a felony; (2) had their license to carry suspended; (3) were under the age of eighteen; (4) were under the age of twenty-three and had been adjudicated to be a delinquent child for an act that would be a felony if committed by an adult; (5) "had been arrested for a Class A or Class B felony for an offense committed before July 1, 2014," or for a "Level 1, Level 2, Level 3, or Level 4 felony for an offense committed after June 30, 2014," or for "any felony that was committed while armed with a deadly weapon that involved the use of violence, if a court ha[d] found probable cause to believe that the person committed the offense charged"; or (6) was prohibited by federal law from receiving firearms. I.C. § 35-47-2-3(i) (2021).

[31] In 2022, our General Assembly flipped this scheme on its head. Instead of requiring those who wished to carry a handgun to obtain a license, the statute

now generally permits "a person who is at least eighteen (18) years of age and is not otherwise prohibited from carrying or possessing a handgun under state or federal law" to carry a handgun in Indiana without obtaining a license or permit from the State. I.C. § 35-47-2-3(a).[14]

[32] At the same time, our General Assembly enacted Indiana Code Section 35-47-2-1.5, which provides that certain persons are prohibited from carrying handguns, specifically: (1) a person convicted of a state or federal offense punishable by a term of imprisonment exceeding one year; (2) a fugitive from justice; (3) an alien; (4) a person convicted of domestic violence, domestic battery, or stalking; (5) a person restrained by a protection order; **(6) a person under "indictment"**; (7) a person who has been adjudicated dangerous, mentally defective, or committed to a mental institution; (8) a person dishonorably discharged from the military; (9) a person who has renounced his or her citizenship; and (10) a person who is under the age of eighteen or under the age of twenty-three if the person has a juvenile adjudication for an offense that would be a serious violent felony if committed by an adult. I.C. § 35-47-2-1.5(b) (emphasis added).

[33] One notable difference between the prior scheme and the current scheme is that, previously, a person who had been "arrested" for certain felonies could not obtain a handgun license, but only "if a court ha[d] found probable cause to

---

[14] "A person who wishes to carry a firearm in another state under a reciprocity agreement entered into by this state and another state may obtain a license to carry a handgun in Indiana . . . ." Ind. Code § 35-47-2-3(a).

believe that the person committed the offense charged." I.C. § 35-47-2-3(i)(5) (2021). Under the current scheme, however, a person convicted of, or under "indictment" for **any** felony[15] cannot carry a handgun.

[34] Generally, an indictment is "'an accusation in writing found and presented by a grand jury, legally convoked and sworn, to the court in which it is impaneled, charging that a person therein named has done some act, or been guilty of some omission, which by law is a public offense, punishable on indictment.'" *Ajabu v. State*, 677 N.E.2d 1035, 1040 (Ind. Ct. App. 1997) (quoting BLACK'S LAW DICTIONARY 772 (6th ed. 1990)), *trans. denied*. Whereas an information is "a formal criminal charge made by a prosecutor without a grand-jury indictment." Information, BLACK'S LAW DICTIONARY (11th ed. 2019).

[35] Here, however, Indiana Code Section 35-47-2-1.5(a)(7) defines "indictment" to mean "any formal accusation of a crime made by a prosecuting attorney in any court for a crime punishable by a term of imprisonment exceeding one (1) year." This broad definition includes an actual indictment by a grand jury or a charging information. Notably, however, it does **not** require a judicial determination of probable cause, unlike the prior version of Indiana Code Section 35-47-2-3(i), which did require such a probable cause finding. Thus, for

---

[15] The statute does not use the word felony, but instead uses the phrase "a federal or state offense punishable by a term of imprisonment exceeding one (1) year." I.C. § 35-47-2-1.5(a)(7), (b)(1). All felonies in Indiana are punishable by a term of imprisonment exceeding one year. *See* Ind. Code §§ 35-50-2-3 through 35-50-2-7. And no misdemeanor offense is punishable by a term exceeding one year. *See* Ind. Code §§ 35-50-3-2 through 35-50-3-4. Accordingly, by referring to offenses punishable by a term exceeding one year, the statute refers only to felonies.

purposes of Indiana Code Section 35-47-2-1.5, it does not matter whether someone has been convicted of a felony or whether the person has simply been formally charged with a felony. In either case, the person is prohibited by Indiana Code Section 35-47-2-1.5(b) from carrying a handgun.

[36] I am concerned that Indiana Code Section 35-47-2-1.5(b)(6) prohibits a person from carrying a handgun based solely on the **filing** of a felony charge, without a judicial finding of probable cause. In Indiana, "[a]ny crime may be charged by indictment or information." Ind. Code § 35-34-1-1(a). Although a prosecutor has a professional and ethical duty not to file charges unless he or she is satisfied that the charges are supported by probable cause, *State v. Palmer*, 496 N.E.2d 1337, 133 (Ind. Ct. App. 1986), "[a] probable cause determination is not a constitutional prerequisite to the filing of [a charging] information itself," *Scott v. State*, 404 N.E.2d 1190, 1193 (Ind. Ct. App. 1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 125 n.26, 95 S. Ct. 854, 868 (1975)). A state must, however, "provide for a determination of probable cause as a condition for any significant pre-trial restraint of liberty." *Id.* (citing *Albrecht v. United States*, 273 U.S. 1, 5, 47 S. Ct. 250, 251, (1927)). Thus, where a charging information is the basis of an arrest warrant, a demonstration of probable cause is required. *Id.*

[37] Under the current language of Indiana Code Section 35-47-2-1.5(b)(6), a person could be deprived of the right to carry a handgun based solely on the decision of a prosecuting attorney to file a felony charge against the person, without any judicial determination of probable cause. This would constitute a significant pre-trial restraint of liberty, by depriving a defendant of the right to bear arms,

and trigger the constitutional requirement of a judicial finding of probable cause.[16]

[38] This potential constitutional problem, however, does not present itself in the case before us. Here, the trial court in both cases in which Moore was charged with Level 6 felonies made a finding of probable cause. Ex. Vol. pp. 16, 39. Accordingly, I agree with the majority that, under the particular facts of the present case, the statutory restriction on Moore's ability to carry a handgun is consistent with the principles underpinning the nation's historical tradition of firearm regulation.

[39] I also disagree with Moore's characterization of his crimes. Although his crimes are "low level" felonies, they are felonies nonetheless. As *Heller* and *McDonald* recognized, longstanding regulatory measures prohibiting the possession of firearms by felons are not prohibited by the Second Amendment. *McDonald*, 561 U.S. at 786, 130 S. Ct. at 3047 (quoting *Heller*, 554 U.S. at 626, 128 S Ct. at 2816-17). And although dealing in marijuana is not necessarily a violent crime, our casebooks are filled with marijuana deals that have turned violent. *See, e.g.*, *Hardiman v. State*, 222 N.E.3d 1049 (Ind. Ct. App. 2023), *trans. denied*. Nor can I ignore that the sexual battery with which Moore was charged

---

[16] This potential constitutional problem could be easily addressed by amending Indiana Code Section 35-47-2-1.5(a)(7) to require a judicial finding of probable cause before a person under "indictment" is prohibited from carrying a handgun. That is, if the statute defined "indictment" to mean "any formal accusation of a crime made by a prosecuting attorney in any court for a crime punishable by a term of imprisonment exceeding one (1) year, **if a court has found probable cause to believe that the person committed the offense charged**," then this potential constitutional infirmity may be eliminated.

alleged that the victim was compelled to submit to a touching by force or the imminent threat of force. Ex. Vol. p. 14. Put simply, the offenses with which Moore was charged are not non-violent, low-level crimes.

[40] Moreover, Moore is not completely disarmed by operation of Indiana Code Section 35-47-2-1.5. Instead, this statute merely prevents him from carrying a handgun; it does not prevent him from keeping a handgun in his home, nor does it appear to prevent him from carrying a firearm that is not a handgun. Accordingly, I conclude that—because Moore's felony charges were supported by a judicial finding of probable cause, which could support his total disarmament and even incarceration—the restriction on Moore's right to carry a handgun is consistent with our nation's historical tradition of firearms regulation, and the restriction does not unconstitutionally deprive Moore of his Second Amendment right to bear arms.

[41] I also concur with the majority's conclusion that, under Article 1, Section 32, the restriction at issue here—which prohibits someone charged with a felony from carrying a handgun—is a valid exercise of the police power, at least when an independent judicial magistrate has determined that the charge(s) are supported by probable cause. Because such a probable cause finding was made here, the restriction passes the first step of the analysis. As for the second part of the analysis, I also agree that the restrictions imposed on Moore do not materially burden a core value. As I noted above, Section 35-47-2-1.5 does not prevent Moore from possessing a handgun at his home or place of business.

Nor does it prevent him from carrying a firearm that is not a handgun. Thus, Moore's rights under Article 1, Section 32 have not been materially burdened.

**Summary**

[42] In summary, I concur with the majority that Section 35-47-2-1.5 does not violate the Second Amendment or Article 1, Section 32 **as applied** to Moore, because, here, an independent judicial magistrate found that there was probable cause to support the charges. Although the issue is not before us today, had there not been such a probable cause finding, a possibility exists that the result would be different.